## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF OHIO

## EASTERN DIVISION

| | | |
|---|---|---|
| JULIE A. SCHIAVONI<br>10075 Stone Hollow Road<br>Concord Township, OH 44060 | ) <br> ) | |
| Plaintiff, | ) | |
| -vs- | ) | |
| | ) | **COMPLAINT** |
| SCOTT J. MARN, *individually and in his official capacity,*<br>8500 Civic Center Boulevard<br>Mentor, OH 44060 | ) <br> ) <br> ) | Trial by Jury Endorsed Hereon |
| and | ) <br> ) | |
| MATTHEW E. DONOVAN, *individually and in his official capacity,*<br>8500 Civic Center Boulevard<br>Mentor, OH 44060 | ) <br> ) | |
| and | ) | |
| JOHN A. KRUEGER, *individually and in his official capacity,*<br>8500 Civic Center Boulevard<br>Mentor, OH 44060 | ) <br> ) | |
| and | ) <br> ) | |
| MARK T. FREEMAN, *individually and in his official capacity,*<br>8500 Civic Center Boulevard | ) | |

Mentor, OH 44060                      )

      and                            )

RAY KIRCHNER, *individually and*     )
*in his official capacity,*
  8500 Civic Center Boulevard         )
  Mentor, OH 44060

                                     )

      and                            )

JANET A. DOWLING, *individually and* )
*in her official capacity,*
  8500 Civic Center Boulevard         )
  Mentor, OH 44060

      and                            )

SEAN P. BLAKE, *individually and in his* )
*official capacity,*
  8500 Civic Center Boulevard         )
  Mentor, OH 44060

      and                            )

CITY OF MENTOR                       )
  8500 Civic Center Boulevard         )
  Mentor, OH 44060

                         Defendants.  )

## NATURE OF THE ACTION AND CLAIMS

1. This is an action instituted under state and federal anti-discrimination and anti-retaliation laws arising out of a relentless and continuing pattern of employment discrimination and retaliation prohibited by Title VII of the Civil Rights Act of 1964,

42 U.S.C. §§ 2000e-1, *et seq.*, as amended (2024 Supp.), under the Age Discrimination in Employment Act (ADEA), as amended, 29 U.S.C. §§ 623*, et seq.* (2024 Supp.), **as well as under equivalent  state law, the** Ohio Civil Rights Act, as amended, Ohio Revised Code §§ 4112.01, *et seq.* (2024 Supp.) to vindicate state and federally protected rights against unlawful employment practices and for the denial of equal protection under the law and due process of law ensured under the Fourteenth Amendment to the Constitution of the United States.

## <u>JURISDICTION AND VENUE</u>

2. Jurisdiction is invoked pursuant to the Ohio Civil Rights Act, Ohio Revised Code, §§ 4112.01, *et seq.* , as amended *(*2024 Supp.) Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.,* as amended (2024 Supp.) (hereinafter referred to as "Title VII"), the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 623, *et seq.*, as amended (2024 Supp.),  and jurisdiction with respect to constitutional claims under 28 U.S.C. §§ 1331(a), 1337 and 1343(3) and (4).

3. Jurisdiction arises pursuant to receipt of the Equal Employment Opportunity Commission's Notice of Right to Sue ("Notice") dated September 3, 2024, postmarked from the EEOC on September 18, 2024 and received on September 24, 2024. The notice accompanies this complaint and is incorporated by reference as Exhibit A.

5. Venue in this Court is proper because the unlawful employment practices alleged were and continue to be committed within the jurisdiction of the United States District Court for the Northern District of Ohio, Eastern Division.

## PARTIES

6. Plaintiff JULIE A. SCHIAVONI has been employed by Defendants SCOTT J. MARN, MATTHEW A. DONOVAN, JOHN A. KRUEGER, MARK T. FREEMAN, RAY KIRCHNER, JANET A. DOWLING, SEAN P. BLAKE and THE CITY OF MENTOR  and has sought to perform her duties free from restrictions relating to her sex, female, age, and free from restrictions of retaliation for the exercise of state and federally protected rights.

7. Defendant SCOTT J. MARN is a citizen of Mentor, Ohio, a longstanding member of the City of Mentor's City Council, the employer of the Plaintiff, and has been named a Defendant in his individual and official capacities.

8. Defendant MATTHEW E. DONOVAN is a citizen of Mentor, Ohio, a longstanding member of the City of Mentor's City Council, the employer of the plaintiff, and has been named a Defendant in his individual and official capacities.

9. Defendant JOHN A. KRUEGER is a citizen of Mentor, Ohio, a longstanding member of the City of Mentor's City Council, the employer of the plaintiff, and has been named a Defendant in his individual and official capacities.

10. Defendant MARK T. FREEMAN is a citizen of Mentor, Ohio, a longstanding member of the City of Mentor's City Council, the employer of the plaintiff, and has been named a Defendant in his individual and official capacities.

11. Defendant RAY KIRCHNER is a citizen of Mentor, Ohio, a longstanding member of the City of Mentor's City Council, the employer of the Plaintiff, and has been named a Defendant in his individual and official capacities.

12. Defendant JANET A. DOWLING is a citizen of Mentor, Ohio, a longstanding member of the City of Mentor's City Council, the employer of the Plaintiff, and has been named a Defendant in her individual and official capacities.

13. Defendant SEAN P. BLAKE is a citizen of Mentor, Ohio, a longstanding member of the City of Mentor's City Council, the employer of the Plaintiff, and has been named a Defendant in his individual and official capacities.

14. Defendant CITY OF MENTOR, OHIO, a municipal corporation subject to the laws of the State of Ohio and the United States, is an employer who compensates the plaintiff as an employee of the City of Mentor Ohio's City Council.

## BACKGROUND

15. Plaintiff reasserts the foregoing allegations and incorporates them by reference as if fully set forth herein.

16. Plaintiff Julie A. Schiavoni has been an employee of defendant City of Mentor for three decades with an exemplary reputation for and record of hard work, devotion to duty and knowledgeable about the rules and policies of the City of Mentor.

17. The Plaintiff, the City of Mentor, the City of Mentor's City Council and the members of City Council are subject, *inter alia,* to the laws of the State of Ohio, the laws of the United States and to the Constitution of the United States.

18. In December, 1994, Plaintiff Julie A. Schiavoni was hired by Defendant City of Mentor as a part-time Administrative Assistant in the City of Mentor's Department of Economic Development, part of the executive branch of Mentor's municipal government, which at the time did not pay employment benefits with her salary.

19. In May, 1995, Defendant City of Mentor promoted Ms. Schiavoni to a full-time position as Administrative Assistant in the City of Mentor's Department of Economic Development and also compensated her with government benefits.

20. In that position, Ms. Schiavoni worked on the first floor.

21. Ms. Schiavoni became aware of problems another female employee was having with Mr. Marn.

22. Ms. Schiavoni performed her work without incident at that juncture of her employment.

23. In May, 2004, because of her well known stellar employment performance record, her desire to move up and to receive greater compensation and benefits, Ms. Schiavoni applied for a position of Assistant Clerk of Council under the Law Director.

24. The Clerk of Council is presently the Assistant Clerk of Council's superior.

25. As early as the years before and continuing for decades, a City of Mentor female employee identified City of Mentor Councilman Scott Marn, a longstanding and influential member of Mentor City Council, as lacking "boundaries when it comes to females in a professional setting."

26. The female employee was subjected to City of Mentor Councilman Marn pressing her to observe photographs of his wife's bare-bosomed breast augmentation with the silent acquiescence of Mentor City Council.

27. Women working for the government of the City of Mentor have endured a laundry-list of gender-based outrages by the City of Mentor Councilman Marn with the silent acquiescence of Mentor City Council.

28. A majority of the Defendants and other appointed Mentor officials are and have been aware of the demonstrable indignation that female employees have been forced to endure and have done nothing to stop it, including Councilman Marn's obsessive behavior over women's breasts which have freely occurred without sanction or consequence by colleagues on Mentor City Council.

29. While Councilman Marn's appalling behavior has sickened women working at city hall, the remaining Defendants have silently condoned the behavior by failing to take prompt, meaningful action to stop him.

30. Because of the silent acquiescence of the Defendants, Councilman Marn has been unhesitant in showing bare breasts to female employees.

31. Because of the power of Defendant Marn's position and the absence of formal policy and training, the employees have had no remedy to stop him because no meaningful process exists under the City of Mentor City Council's rules or procedures.

32. To display the bare-bosoms more easily, Defendant Marn ultimately used the photographs as a phone screen-saver as a more convenient method of female large-breast display.

33. Because of the extroverted nature of Councilman Marn, the Mentor City Council's fellow member, Defendants have resigned themselves with discontent to the reality of suffering that female employees were required to endure following the relentless, boorish and disgusting exhibitions by and behavior of Councilman Marn.

34. City of Mentor-employed women and men of decency were regularly subjected to Defendant Marn's disgraceful and offending behavior.

35. Defendant Marn's message was that, with his displays and related physical behavior set forth in more detail hereinafter, his public attitude about bare breast displays has been, "the bigger, the better."

36. The intensity of Defendant Marn's actions at Mentor City Hall and at City of Mentor-sponsored events didn't stop with mammary ostentation.

37. Defendant Marn solicited to a City of Mentor female that he had a "*Golden Ticket*," the right to have sex with other women free from marital obligations.

38. For a "majority of the time . . ." in the midst of Mentor City Council business Defendant Marn would rub his leg against a female [employee] at council table and, when a female was wearing a skirt, would "rub his hand against [her] leg during a meeting."

41. Using his authority as an elected member of Mentor City Council by authorizing a raise from 3% for a woman, Defendant Marn actually wrote on the printed Mentor City Council agenda she saw that the raise he proposed that the female employee should use the additional money for breast enhancement.

42. Defendant Marn was specific about the nature of breast enlargement (to an enlargement of a "*C or D*," he wrote), referring to cup size which the female employee was pushed by Defendant Marn to be increased to if she were to seek out breast surgery and use the government pay increase for that purpose.

43. After thirteen (13) years of service, the female Clerk of Council at the time resigned.

44. When the position of Clerk of Council became vacant and because the position would represent a substantial raise in pay, Ms. Schiavoni applied for the position of Clerk of Council.

45. In October, 2016, Mentor City Council hired Ms. Schiavoni as Clerk of Council.

46. That promotion placed her in the top staff position of the legislative branch which made Mentor City Council and the members of City Council her superiors.

47. The Assistant Clerk of Council, Ms. Schiavoni's former position, was thereafter filled by a female who filled Ms. Schiavoni's former position and was assigned work in the same office with Ms. Schiavoni and whom Ms. Schiavoni was responsible for serving as her superior.

48. In October or November, 2020, Defendant Marn came into their office and advised Ms. Schiavoni's Assistant Clerk of Council that she should refer to Mentor's Board of Building and Zoning Appeals member James Guynn as "Forest."

49. Defendant Marn explained that she should use the moniker because, he explained to her, "it's like a forest down there," referring to Mr. Guynn's crotch area, and, unlike Mr. Guynn, Marn described the wife of Mr. Guynn saying to him that he, Marn, was doing a very good job in "manscaping" his groin area.

50. Being particularly uncomfortable about Defendant Marn's reference to her subordinate, Ms. Schiavoni apologized to her subordinate, then called Mr. Marn and diplomatically encouraged him to apologize to her assistant.

51. Defendant Marn did not apologize and both the assistant and Ms. Schiavoni were fearful of retaliation based on Ms. Schiavoni's justifiable objections to Defendant Marn's behavior.

52. Mr. Marn's behavior was offensive to both the Assistant Clerk of Council and Ms. Schiavoni.

53. Mr. Marn's actions, the failure to apologize for his gender-based misconduct and his grotesque judgment and Ms. Schiavoni's memo about sexual harassment triggered more anger by Defendant Marn.

54. As Ms. Schiavoni would soon learn, it would be the start of a pattern of retaliation and intimidation against Ms. Schiavoni by Defendant Marn and others on Mentor City Council.

55. By September, 2021, , Defendant Marn demanded a "Disciplinary Hearing" directed to the Council President and Council Vice President, Defendant Donovan, against Ms. Schiavoni, seeking a "reprimand" of Ms. Schiavoni because he considered the report "slander" concerning another manager.

56. The purpose and effect of Defendant Marn's seeking punishment of Ms. Schiavoni was as a result of her report of sexual harassment.

57. Although pushing for a disciplinary hearing against Ms. Schiavoni, Defendant Marn appeared to be defending the perpetrator of sexual harassment.

58. Ultimately, while a "Disciplinary Hearing" was scheduled against Ms. Schiavoni, it was "cancelled" on the day it was scheduled to proceed when other members of council rejected the hearing.

59. In September, 2021, the City of Mentor's executive branch, through its Department of Human Resources, began an investigation.

60. But the continuing active retaliation by City Council members against its subordinate, Ms. Schiavoni, did not cease in retaliation of her, a violation of a federally protected right.

61. On September 8, 2021, Ms. Schiavoni's Assistant Clerk of Council resigned.

62. On October 19, 2021, because of the vacancy, Ms. Schiavoni was required to perform work in both positions, her job as Clerk of Council, and the duties of the Assistant Clerk of Council which she had delegated, resulting in city council passing Mentor City Ordinance No. 21-0-066 at a Mentor City Council meeting which provided Ms. Schiavoni with supplemental pay for being responsible for both jobs.

63. The October 19th meeting was livestreamed to the public where Defendant Marn ridiculed and embarrassed Ms. Schiavoni.

64. The public humiliation by Defendant Marn, in utilizing his superior position to Ms. Schiavoni, sought to generate substantial anxiety and fear and did so.

65. Defendant Marn continued what became a pattern of violations of her federally protected right against discrimination and retaliation.

66. On December 7, 2021, Defendant Marn continued his livestreamed public rant to the public against Ms. Schiavoni at a Mentor City Council meeting without any opportunity for Ms. Schiavoni to be heard.

67. Like the October 19, 2021 livestream, Defendant Marn sought to generate substantial anxiety and fear in Ms. Schiavoni and in violation of a federally protected right as part of a pattern of retaliation and intimidation against Ms. Schiavoni.

68. In retaliation for her memo, Defendant Marn then publicly accused Ms. Schiavoni of "theft in office," and "stealing from the taxpayers," in without any opportunity for Ms. Schiavoni to be heard.

69. The December 7, 2021 livestream rant likewise sought to generate substantial anxiety and fear in violation of a federally protected right as part of a pattern of retaliation and intimidation against Ms. Schiavoni.

70. In January, 2022, Defendant Marn continued his rant directly to Ms. Schiavoni, concerning how he wanted the office to be run and that Ms. Schiavoni would be "collateral damage" by the time he got done with her where he has not done so with male employees.

71. The January, 2022 rant generated more anxiety and fear in violation of a federally protected right as part of a pattern of retaliation and intimidation against Ms. Schiavoni.

72. During the January, 2022 conversation, Defendant Marn remarked about Ms. Schiavoni's age and that she should retire, generating substantial anxiety and fear in violation of a federally protected right as part of a pattern of retaliation and intimidation against Ms. Schiavoni.

73. On January 18, 2022, Defendant Marn got physically very close to Ms. Schiavoni with the intent to intimidate her, puffed out his chest and physically blocked her from entering an Executive Session of City Council which she is required to do as part of her job.

74. Ms. Schiavoni regularly attended Executive Sessions as part of her function as Clerk of Council because she was responsible for affirming the topic of the proceedings.

75. Defendant Marn intentionally frightened and barred her from the January 18, 2022 meeting she has consistently done in her years of service in violation of a federally protected right as part of a pattern of retaliation and intimidation against Ms. Schiavoni.

76. Defendant Marn and then Defendant Donovan, then-President of City Council ,were responsible for barring her in retaliation for the exercise of a federally protected right as part of a pattern of retaliation and intimidation against Ms. Schiavoni.

77. In March, 2022, a new Assistant Clerk of Council was hired and complained of significant respiratory distress symptoms shortly after her hire.

78. She explained to Ms. Schiavoni that the condition subsided when she would leave city hall for lunch or went home for the evening, while the respiratory distress recurred upon her return to the building.

79. Defendant Marn told the new Assistant Clerk that maybe she was "allergic to Ms. Schiavoni" as part of a pattern of retaliation and intimidation against Defendant Marn initiated against Ms. Schiavoni.

80. Defendant Donovan told both the new assistant clerk and Ms. Schiavoni that Ms. Schiavoni would be removed from the office for a week or two to see if her symptoms were alleviated as part of a pattern of retaliation and intimidation against Ms. Schiavoni.

81. Defendant Marn and Defendant Donovan approached the City of Mentor's chief engineer in the Engineering and Building Department at city hall.

82. The intent in Defendants Marn and Donovan approaching the city engineer was to try and remove Ms. Schiavoni from her office to an empty office in the engineering department where no male employees were subjected to similar treatment.

83. The intent in Defendants Marn and Donovan to move Ms. Schiavoni out of her office was sought as a "permanent" one, despite the wall plaque at City Hall which identified Ms. Schiavoni's office as Clerk of Council, along with the office of City Council and the Law Director, all as part of a pattern of retaliation and intimidation against Ms. Schiavoni.

84. The purpose of the proposed move was intended to cause humiliation and embarrassment for her exercise of a federally protected right.

85. As the relentless pattern of retaliation and intimidation continued, Ms. Schiavoni organized her materials with the intention of exercising additional rights under law to file a charge affidavit against her superiors with the United States Equal Employment Opportunity Commission (EEOC) for discrimination and retaliation based on sex and age.

86. In the spring/summer, 2022, in retaliation, Defendant Marn ratcheted up his physical intimidation of Ms. Schiavoni by tapping her on the arm when he sat to her left at a public City Council meeting and drew her attention to the screen on his cellphone.

87. Defendant Marn was displaying his screensaver, a close-up photograph of a woman's naked breasts and attempted to show Ms. Schiavoni another photograph, but

was rejected after she turned away as part of a pattern of retaliation and intimidation against Ms. Schiavoni.

88. Some defendant members of City Council were and continue to be aware that Ms. Schiavoni had been a victim of sexual and physical violence that nearly cost her life on a variety of occasions.

89. A party to a 12-year abusive marriage, she survived the torture of forced Russian roulette, hanging, strangling and smothering, not to mention the psychological abuses which arose out of the extreme acts of physical and emotional violence she endured.

90. Although remarried to a good and decent person now, she still endures the consequences of torture because of the extreme workplace excesses relating to sex bias and retaliation by Defendant Marn and others, exacerbating her physical and emotional suffering.

91. The stresses of those experiences and the on-going experiences by Mentor City Council members have triggered colitis, hair loss, skin conditions and high levels of stress.

92. Despite the retaliation and gender-based intimidation, Ms. Schiavoni remains in a constant state of exhaustion which she has endeavored to combat while still performing in an exemplary manner.

93. Ms. Schiavoni has expressed that she has done her best in now allowing the pain caused by the defendants to interfere with her duties.

94. Likewise, the flashbacks triggered by Marn and the deliberate indifference of the elected officials remain extreme and troubling, but she has endeavored to focus attention on work and has performed at the highest level.

95. Ms. Schiavoni regularly suffered from stomach sickness, feeling light-headed and hot and cold at the same time.

96. Other city officials have observed the maladies which occur in the workplace arising out of the discrimination and retaliation against Ms. Schiavoni by Defendants Marn and other member of Mentor City Council.

97. The headaches Ms. Schiavoni have suffered have been and continue to be debilitating and caused by the unrelenting retaliation by Defendant Marn and other members of Mentor City Council.

98. Ms. Schiavoni's feeling of helplessness while under the thumb of Defendant Marn is similar to the helplessness she endured during the violence of her prior marriage.

99. On November 15, 2022, Defendants Marn and Donovan attempted to limit how Ms. Schiavoni used earned vacation time, claiming other city departments brought it to their attention as part of a pattern of retaliation and intimidation against Ms. Schiavoni.

100. In checking with the Department of Finance, the department advised it had no complaint.

101. Defendants repeated the false assessment concerning earned vacation time in retaliation for the exercise of a federally protected right as part of a pattern of retaliation and intimidation against Ms. Schiavoni.

102. On November 17, 2022, Defendants Donovan and Marn met with the Law Department and Ms. Schiavoni, reasserting the false assessment of earned vacation time.

103. Defendant Marn became physical loud, threatening and intimidating and threatened to fire her if it weren't resolved.

104. By the end of 2022, unbeknownst by the defendants and having no redress from the outrageously misogynistic and retaliatory actions by the defendants, Ms. Schiavoni had formally filed intake information concerning her allegations of sex discrimination, age discrimination and statutory retaliation with the United States Equal Employment Opportunity Commission (EEOC).

105. On December 6, 2022, Defendant Marn again ranted on a livestreamed Council meeting about Ms. Schiavoni's receiving a pay-out of some of her earned vacation time with the intent to intimidate, humiliate and retaliate against her for the exercise of a federally protected right as part of a pattern of retaliation and intimidation against Ms. Schiavoni and without any ability by Ms. Schiavoni to respond to Defendant Marn's baseless accusations.

106. On February 16, 2023, unbeknownst to Ms. Schiavoni, Defendants Marn and Donovan attempted to set up a secret meeting with Ms. Schiavoni's assistant for an after-hours meeting behind Ms. Schiavoni's back and even though both defendants knew that the assistant clerk reported directly to Ms. Schiavoni.

107. On February 22, 2023, Defendant Marn then intervened with Building Superintendent Lorne Vernon to tell him that Ms. Schiavoni was cut off from authority to authorize renovations which existed in the budget and for which she had been responsible where Marn has not subject any male employees to similar treatment.

108. The purpose and effect of Defendant Marn's intervention was to retaliate against her by reducing her by job responsibilities in retaliation for the exercise of a federally protected right as part of a pattern of retaliation and intimidation against Ms. Schiavoni.

109. On March 15, 2023, Ms. Schiavoni's assistant disclosed that Defendant Donovan called her after hours and wanted to have a separate lunch with him about the operation of the office, then texted her, advising that he would have Defendant Marn attend as part of a pattern of retaliation and intimidation against Ms. Schiavoni.

110. The "bigger issue" was that Ms. Schiavoni had been suffering through the relentless retaliation and intimidation at the hands of Defendants Marn and Donovan with the silent acquiescence of the other members of Mentor City Council.

111. On March 21, 2023, Defendant Marn broadened his attempted intimidation and retaliation against Ms. Schiavoni by communicating with representatives of the Mentor Police Department and Mentor Fire Department  labor representatives by restating the same untruthful claim from October 19, 2021 about supplemental pay for Ms. Schiavoni's being responsible for two jobs while Ms. Schiavoni was never provided any opportunity to rebut in order to demonstrate that what was being represented to the

police and fire department labor personnel was untruthful and advanced solely to retaliate against Ms. Schiavoni for engaging in a right protected by federal law.

112. The meeting by Defendants Marn and Donovan was part of a relentless pattern of retaliation and intimidation against Ms. Schiavoni.

113. Defendant Marn's rants were similar to the October 19, 2021 rants to diminish Ms. Schiavoni's status and good reputation and retaliate for the exercise of a federally protected right as part of a pattern of retaliation and intimidation against Ms. Schiavoni.

114. On March 31, 2023, Ms. Schiavoni's assistant met with Jennifer Phillips of Gallagher & Sharp who shared with the assistant about "physical issues" and "underlying bigger issues" in the office referenced by the attempted secret meeting with Defendants Marn and Donovan on February 16, 2023.

115. By that time, Ms. Schiavoni believes that the former federal charges had been served on the Defendant City of Mentor by the United States Equal Employment Opportunity Commission (EEOC).

116. On April 18, 2023, discussions took place among City Council members concerning the assistant's concerns in the office and the EEOC charge filed by Ms. Schiavoni.

117. In retaliation for her charge, Defendants sought to replace Ms. Schiavoni's responsibility of creating policies and to reduce Ms. Schiavoni's job responsibilities by creating a "Council Policies Committee" which would include removing the listed job duties of the Clerk of Council as part of a pattern of retaliation and intimidation.

118. On April 19, 2023, Defendant Marn forwarded a years-old, discredited email concerning a former legal assistant who had been fired that was intended to be part of a pattern of retaliation and intimidation against Ms. Schiavoni.

119. On July 12, 2023, Defendants Donovan, Freeman and Dowling met for a "review of Council Policies which notes in their minutes about 'input of Clerk of Counci[l]'" which had not occurred with Ms. Schiavoni and Clerk of Council to cut off job description obligations which had been those of Ms. Schiavoni and eliminate other responsibilities.

120. The objective was to work down a sufficient number of job duties, forcing the position of Clerk of Council to become part time, deny her government benefits and reduce the fulltime chartered position which Ms. Schiavoni holds to part time, all in retaliation for the exercise of the federally protected right not to be retaliated against and without any process or procedure to rebut the justifications in attempting to reduce or eliminate her employment as Clerk of Council.

121. At roughly the same time, Defendant Marn was having Ms. Schiavoni's assistant process his billings which is a function of Ms. Schiavoni's job.

122. On July 19, 2023, although access to processing is done by Ms. Schiavoni, Defendant Marn sent his bills to her assistant instead.

123. On August 31, 2023, Ms. Schiavoni was to receive her past-due pin for 25 years of service and initially understood that it would be presented by the only female member of City Council, Jan Dowling.

124. Instead, Defendant Marn showed up, grabbed Ms. Schiavoni when the city photographer appeared for the presentation.

125. When Ms. Schiavoni saw it was the 30-year pin erroneously given to Mr. Marn to present, Ms. Schiavoni said she couldn't take it because her thirtieth year would have been the following year (2024) and she was due her 25-year pin, but the ceremony was cancelled because of COVID.

126. Marn, pulling her close to himself with the photographer nearby whispered, smiling, *"You should have taken the 30 [-year pin], because . . . you never know."*

127. In January, 2024, EEOC arranged to have an experienced Title VII lawyer handle a mediation which was set for January, 2024.

128. Defendant Blake advised that, in the event he was selected as president of Mentor City Council, her right to attend Executive Session meetings would be restored and the right to proceed with council office renovations would also be restored.

129. On January, 2024, a private mediation took place among the parties, all of whom agreed to keep proposed terms of resolution confidential.

130. Thereafter, Defendant Marn disclosed a material element of a proposed settlement, despite a signed agreement with EEOC that the terms of the proposed settlement were to be confidential as part of a pattern of retaliation and intimidation against Ms. Schiavoni.

131. No action was taken against Marn for the breach of confidentiality which all the parties agreed should not have been disclosed.

132. On March 31, 2024, the newly selected president, Defendant Blake, changed his mind and did not permit Ms. Schiavoni to return to Executive Session meetings in retaliation for her pursuing her Title VII rights.

133. Defendant Blake admitted the correlation between attending Executive Sessions and it not occurring until "EEOC [the Title VII claim] is done," in retaliation for her exercise of federally protected rights.

134. On May 29, 2024, instead of properly processing billings, defendant Marn emailed Ms. Schiavoni's assistant to advise her to "put in my box and I will sign it and hide it on your desk," in retaliation for the Title VII charge pending.

135. Although the City of Mentor and the Mentor City Council have no formal policy and has had no formal substantive training concerning employment discrimination and retaliation on the basis of sex and on the basis of other categories, they are nonetheless subject to the laws against discrimination and retaliation as set forth in the Ohio Revised Code and the United States Code.

136. Although the City of Mentor and the Mentor City Council have no formal policy and have had no formal substantive training concerning employment discrimination and retaliation on the basis of sex and on the basis of other categories, they are nonetheless subject to the Constitution of the United States which prohibits governmental discrimination and retaliation based on sex and on the basis of other

categories and entitle governmental employees to equal protection of the law and due process of law under the Constitution of the United States.

137. All the Defendants are aware of the history of a pattern of sex discrimination and retaliation which have been asserted by the Plaintiff.

138. Defendants are aware of decades of disregard for the law protecting female employees against gender-based misconduct which have occurred with deliberate indifference to the rights of women working for the city and a reckless and undisguised tolerance by Mentor officials which have taken the form of humiliating events and ratifying sex-based remarks, touchings and disgusting gender-linked and biased displays and conversations.

139. The silent acquiescence by other Mentor members of Mentor City Council emboldened Defendant Marn to continue the pattern of sex-based harassment and degenerate behavior.

140. No female government employee subjected to Mr. Marn's behavior would dare object, fearing the iron-fisted nature of Mr. Marn's mentality and the likelihood of retaliation.

141. Virtually every elected member of Mentor City Council has been aware of the pressures placed on women government employees and other degenerate behavior at Mentor City Hall caused by Defendant Marn.

142. The silent acquiescence of the remaining Mentor City Council members has emboldened and continues to embolden Defendant Marn to engage in a pattern of sex-based misconduct and other degenerate behavior.

143. On September 7, 2024, consistent with decades of treating female government employees in a misogynistic manner, Defendant Marn sponsored on government property at the Mentor Lagoons Marina a publicly announced event, the *"Pimps & Hos"* poker run in which attendees were "encouraged" to dress appropriately with the theme.

144. Defendants have been conscious that their indifference has been and continues to be deliberate as silent bystanders to their colleague Marn's misconduct and other degenerate behavior.

145. As a direct result of the open pattern of discrimination and retaliation by Defendant Marn, encouraged and participated in by the silent acquiescence of the remaining defendant members of Mentor City Council and the City of Mentor itself, Plaintiff has suffered and continues to suffer despair, discomfort, humiliation and obstruction to her obligations in the workplace with no remedies available because of the absence of policy and training.

146. The acts and conduct of the defendants were and continue to be relentless, intentional, malicious and in wanton and reckless disregard of the rights and feelings of the plaintiff.

146. As a result of the acts and conduct of the Defendant, separately and collectively, Plaintiff Julie Schiavoni has suffered substantial emotional and mental distress and

anxiety and continues to suffer as a result of retaliation for the exercise of state and federally protected rights and for the failure to take prompt, meaningful action to stop it, ensured by the Ohio Civil Rights Act, as amended §§4112.01, *et seq.*, as amended (2024 Supp.), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.* (2024 Supp.), the Age Discrimination in Employment Act, as amended, 29 U.S.C. 623, *et seq.*, as amended (2024 Supp.), as well as violations of the Due Process Clause Clause of the Fourteenth Amendment to the Constitution of the United States.

## <u>COUNT I</u>

### (Gender-Based Misconduct, Hostile Work Environment and Denial of Due Process)

147. Plaintiff reasserts the foregoing allegations and incorporates them by reference as if fully set forth herein.

148. In October or November, 2020, Defendant Marn came into the office of the Clerk of Council.in which the Clerk of Council, Julie Schiavoni, and her subordinate, the Assistant Clerk of Council, were present.

149. Defendant Marn directed Ms. Schiavoni's assistant Clerk of Council that she should refer to Mentor's Board of Building and Zoning Appeals member James Guynn as "Forest."

150. Defendant Marn explained that she should use the moniker because, he explained to her, "it's like a forest down there," referring to Mr. Guynn's crotch area, and, Marn

quoted Ms. Guynn's wife as saying that he, Marn, was doing a very good job in "manscaping" his groin area.

151. Defendant Marn's degenerate behavior has been and continues to be well known at Mentor City Hall, particularly in referencing matters of sex.

152. With both women being disgusted by the behavior of their superior Defendant Marn, and with Ms. Schiavoni as a former victim of male abuse being uncomfortable regarding Defendant Marn's reference to her subordinate, Ms. Schiavoni, as her manager, apologized to her subordinate, then called Mr. Marn and diplomatically encouraged him to apologize to her assistant.

153. Defendant Marn did not apologize and both the assistant and Ms. Schiavoni were fearful of retaliation based on Ms. Schiavoni's justifiable objections to Defendant Marn's behavior.

154. Mr. Marn's behavior was deeply offensive to both the Assistant Clerk of Council and Ms. Schiavoni as Mentor's Clerk of Council.

155. Ms. Schiavoni was especially sickened by Defendant Marn's behavior and was aware that defendants have no remedial process or procedure to rectify gender-based improprieties and to enjoin such behavior in the future.

## COUNT II

### (Statutory Retaliation, Hostile Work Environment and Denial of Due Process)

156. Plaintiff reasserts the foregoing allegations and incorporates them by reference as if fully set forth herein.

157. On September 8, 2021, Ms. Schiavoni's Assistant Clerk of Council resigned.

158. By September, 2021, Defendant Marn demanded a "Disciplinary Hearing" to be held against Ms. Schiavoni which was directed to the Council President and Council Vice President, Defendant Donovan over her reporting an incident of sexual harassment by a manager.

159. Defendant Marn demanded a "reprimand" of Ms. Schiavoni because he considered the report "slander," rather than reporting the allegations.

160. The purpose and effect of Defendant Marn's seeking punishment of Ms. Schiavoni was as a result of her seeking to be free from a misogynistic workplace, a protected right.

161. Defendant Marn continued to push pushing for a disciplinary hearing against Ms. Schiavoni.

162. The threat by her superior caused Ms. Schiavoni substantial anxiety and pain during the deliberative process of when and how a Disciplinary Hearing would be prosecuted.

163. Ultimately, the "Disciplinary Hearing" was scheduled against Ms. Schiavoni, aggravating the consequences of her anxiety and concern because she had done nothing wrong and was endeavoring to protect herself against future abusive and misogynistic behavior by Defendant Marn.

164. Ms. Schiavoni was required to secure assistance from legal counsel.

165. When the defendants learned that she obtained an attorney for advice, the Disciplinary Hearing was quickly "cancelled" on the day it was scheduled to proceed.

166. In September, 2021, the City of Mentor's executive branch, through its Department of Human Resources, began an investigation.

167. Defendant Marn's conduct was reckless and intentional.

168. Despite Defendant Marn misogynistic behavior and the follow up retaliation targeting Ms. Schiavoni, Defendant City of Mentor took no action against Defendant Marn and other city council members who pushed for a Disciplinary Hearing.

169. Because no process or procedure existed for Ms. Schiavoni to defend herself, no method existed in the structure of Mentor government to protect her from future acts generating a hostile work environment and retaliation by Defendant Marn and by other members of Mentor City Council.

170. Because of that, the continuing active retaliation by City Council members against its subordinate, Ms. Schiavoni, did not cease.

171. Ms. Schiavoni's health continued to be adversely affected by the unfounded and baseless rants by her superior, Defendant Marn as part of continuing pattern of retaliation and other violations of law.

## COUNT III

**(Statutory Retaliation, Hostile Work Environment, Denial of Due Process and Defamation)**

172. Plaintiff reasserts the foregoing allegations and incorporates them by reference as if fully set forth herein.

173. On October 19, 2021, because of the vacancy, Ms. Schiavoni was required to perform work in both positions, her job as Clerk of Council, and the duties of the Assistant Clerk of Council which she had delegated, resulting in the enactment of Mentor City Ordinance No. 21-0-066 at a Mentor City Council meeting which provided Ms. Schiavoni supplemental pay for being responsible for both jobs.

174. The continuing retaliation, hostile work environment and denial of due process by Defendant Marn continued at the October 19th public City Council meeting.

175. The October 19th meeting was livestreamed to the public where Defendant Marn ridiculed and embarrassed in retaliation for Ms. Schiavoni's grotesque gender-based statement and the failed attempt to punish Ms. Schiavoni at a Disciplinary Hearing which likewise failed.

176. Defendant Marn's retaliation on October 19th was reckless and intentional, generating a more intensive hostile work environment because of her report of abhorrent and misogynistic behavior by Defendant Marn and the subsequent retaliation by him without any opportunity for Ms. Schiavoni to be heard.

177. The loud castigation and public humiliation of Ms. Schiavoni by Defendant Marn, in utilizing his superior position, sought to generate substantial anxiety and fear and did so, particularly as Ms. Schiavoni being a former victim of aggressive physical and emotional abuse.

178. Defendant Marn continued what became a pattern of violations of her federally protected right against discrimination and retaliation.

179. Because of the absence of due process, Ms. Schiavoni was provided no means to refute the baseless and humiliating rants by Defendant Marn and his supporting colleagues on Mentor City Council as part of a continuing pattern of violations of state and federal law.

## COUNT IV

### (Statutory Retaliation, Hostile Work Environment, Denial of Due Process and Defamation)

180. Plaintiff reasserts the foregoing allegations and incorporates them by reference as if fully set forth herein.

181. On December 7, 2021, Defendant Marn again utilized his superior position over Ms. Schiavoni with a continuing livestreamed rant to the public and condemnation against Ms. Schiavoni at a Mentor City Council meeting without any opportunity for Ms. Schiavoni to be heard.

182. Similar to the abusive and untruthful statements Defendant Marn made at the October 19, 2021 livestream, Defendant Marn sought to generate substantial anxiety and fear in Ms. Schiavoni, portraying his subordinate with derision in violation of a federally protected right as part of a pattern of retaliation and intimidation against Ms. Schiavoni.

183. Defendant Marn's retaliation on December 7, 2021 was reckless and intentional, generating a more intensive hostile work environment because of the misogynistic

behavior by Defendant Marn and the subsequent retaliation by him without any opportunity for Ms. Schiavoni to be heard.

184. In retaliation, Defendant Marn then publicly accused Ms. Schiavoni of "theft in office," and "stealing from the taxpayers," without any opportunity for Ms. Schiavoni to be heard.

185. The December 7, 2021 livestream rant by Defendant Marn likewise sought to generate substantial anxiety and fear in violation of a federally protected right as part of a pattern of retaliation and intimidation against Ms. Schiavoni.

186. The actions of Defendant Marn sought to and achieved diminishing Ms. Schiavoni's good name and reputation as a reliable, honest and hard-working public servant and were part of a continuing pattern of retaliation and other violations of law.

## <u>COUNT V</u>

### <u>(Statutory Retaliation and Hostile Work Environment)</u>

187. Plaintiff reasserts the foregoing allegations and incorporates them by reference as if fully set forth herein.

188. In January, 2022, Defendant Marn continued his rant directly to Ms. Schiavoni, assuring her that Ms. Schiavoni would be "collateral damage" by the time he got done with her.

189. The loud castigation and public humiliation of Ms. Schiavoni by Defendant Marn, in utilizing his superior position, sought to generate substantial anxiety and fear and did

so, particularly as Ms. Schiavoni being a former victim of aggressive physical and emotional abuse.

190. The January, 2022 threat additionally generated more anxiety and fear in violation of a federally protected right as part of a continuing pattern of retaliation and intimidation against Ms. Schiavoni by Defendant Marn.

## COUNT VI

**(Age Discrimination, Statutory Retaliation and Hostile Work Environment)**

191. Plaintiff reasserts the foregoing allegations and incorporates them by reference as if fully set forth herein.

192. During the January, 2022 conversation, Defendant Marn remarked about Ms. Schiavoni's age and threatened her that she should retire, generating substantial anxiety and fear in violation of a federally protected right as part of a pattern of retaliation and intimidation against Ms. Schiavoni.

193. The loud castigation and public humiliation of Ms. Schiavoni by Defendant Marn, in utilizing his superior position, sought to generate substantial anxiety and fear and did so, particularly as Ms. Schiavoni being a former victim of aggressive physical and emotional abuse.

194. The acts and conduct of Defendant Marn were reckless and intentional while he pursued a continuing pattern of discrimination and retaliation.

## COUNT VII

### (Assault, Statutory Retaliation, Hostile Work Environment and Denial of Due Process)

195. Plaintiff reasserts the foregoing allegations and incorporates them by reference as if fully set forth herein.

196. On January 18, 2022, an Executive Session was docketed with Mentor City Council.

197. As the Charter of the City of Mentor established the position of Clerk of Council and because Ms. Schiavoni is obligated as a function of her position at Clerk of Council to affirm matters in Executive Sessions, she approached the entrance of the meeting to fulfill her job responsibilities.

198. As Ms. Schiavoni approached the entrance, Defendant Marn got physically very close to Ms. Schiavoni with the intent to intimidate her, puffed out his chest in her face and physically blocked her from entering the Executive Session.

199. Defendant Marn intentionally frightened Ms. Schiavoni who experienced assaults and batteries as a victim of physical and emotional violence and could recognize the nature of Defendant Marn's conduct as a genuine intent by him to employ violence in keeping her out of the meeting she was obliged to attend and faced the reasonable belief that she would be a victim again of physical abuse.

200. Ms. Schiavoni anticipated that Defendant Marn was going to commit a battery and experienced with likely reasonableness that Defendant Marn's threatening and intimidating behavior would lead to her injury.

201. When Defendant Marn blocked her entry to the room in an aggressive and intimidating manner, she declined to move forward and was forced to abandon the meeting for which she was responsible in affirming matters at the evening.

202. The actions and conduct of Defendant Marn were reckless and intentional in barring Ms. Schiavoni from the January 18th Executive Session which she had attended in her years of service in violation of a federally protected right as part of a pattern of retaliation and intimidation against her.

203. Defendant Marn and then Defendant Donovan, then-President of City Council were responsible for barring her in retaliation for the exercise of a federally protected right as part of a pattern of retaliation and intimidation against Ms. Schiavoni.

## <u>COUNT VIII</u>

### <u>(Statutory Retaliation, Hostile Work Environment and Denial of Due Process</u>

204. In March, 2022, a new Assistant Clerk of Council was hired and complained of significant respiratory distress symptoms shortly after her hire.

205. She explained to Ms. Schiavoni that the condition subsided when she would leave city hall for lunch or went home for the evening, while the respiratory distress recurred upon her return to the building.

206. Defendant Marn told the new Assistant Clerk that maybe she was "allergic to Ms. Schiavoni" as part of a pattern of retaliation and intimidation against Defendant Marn initiated against Ms. Schiavoni.

207. Defendant Donovan told both the new assistant clerk and Ms. Schiavoni that Ms. Schiavoni would be removed from the office for a week or two to see if her symptoms were alleviated as part of a pattern of retaliation and intimidation against Ms. Schiavoni.

208. Defendant Marn and Defendant Donovan approached the City of Mentor's chief engineer in the Engineering and Building Department at city hall.

209. The intent in Defendants Marn and Donovan approaching the city engineer was to try and remove Ms. Schiavoni from her office to an empty office in the engineering department.

210. The purpose and intent of Defendants Marn and Donovan was to create tension and anxiety with Schiavoni and to discourage her from performing her work from the office created under the charter of the City of Mentor.

211. The intent in Defendants Marn and Donovan to move Ms. Schiavoni out of her office was sought as a "permanent" one, despite the wall plaque at City Hall which identified Ms. Schiavoni's office as Clerk of Council, along with the office of City Council and the Law Director, all as part of a pattern of retaliation and intimidation against Ms. Schiavoni.

212. The purpose of the proposed move was intended to cause humiliation and embarrassment for her exercise of a federally protected right and was part of a

continuing pattern of retaliation and deprivation of her rights ensure by state and federal law.

## COUNT IX

### (Assault, Battery, Statutory Retaliation, Hostile Work Environment and Denial of Due Process

213. Plaintiff reasserts the foregoing allegations and incorporates them by reference as if fully set forth herein.

214. In the spring/summer, 2022, in retaliation, Defendant Marn ratcheted up his physical intimidation of Ms. Schiavoni.

215. Defendant Marn, knowing the sensitivities of Ms. Schiavoni and her experiences with violence emanating from men and the sordid manner in which he had been threatening her, he took her arm as he sat to her left at a public City Council meeting.

216. After he engaged in the non-consensual touching, he pushed her to observe the screensaver which he apparently maintains on his cellphone.

217. Mr. Marn's attempting to show sensitive women working for the government of Mentor pictures of naked breasts is part of a longstanding pattern of perverse intimidation with the intent of embarrassing and humiliating government employees based on sex.

218. Defendant Marn was displaying on his screensaver a close-up photograph of a woman's naked breasts and attempted to show Ms. Schiavoni another photograph, but

was rejected after she turned away defiantly in response to the pattern of retaliation and intimidation Ms. Schiavoni had experienced with Defendant Marn.

219. A majority of the Defendant City Council members were and continue to be aware that Ms. Schiavoni had been a victim of sexual and physical violence that nearly cost her life on a variety of occasions.

220. A party to a 12-year abusive marriage, Ms. Schiavoni survived the torture of forced Russian roulette, hanging, strangling and smothering, not to mention the psychological abuses which arose out of the extreme acts of physical and emotional violence she endured.

221. Although remarried to good and decent person now, she still endures the consequences of torture because of the extreme workplace excesses relating to sex bias and retaliation by Defendant Marn and others, exacerbating her physical and emotional suffering.

222. The stresses of those experiences and the on-going experiences by Mentor City Council members have triggered colitis, hair loss, skin conditions and high levels of stress.

223. Despite the retaliation and gender-based intimidation, Ms. Schiavoni remains in a constant state of exhaustion which she has endeavored to combat while still performing in an exemplary manner.

224. Ms. Schiavoni has expressed that she has done her best in now allowing the pain caused by the defendants to interfere with her duties.

225. Likewise, the flashbacks triggered by Marn and the deliberate indifference of the elected officials remain extreme and troubling, but she has endeavored to focus attention on work and has performed at the highest level.

226. Ms. Schiavoni regularly suffered from stomach sickness, feeling light-headed and hot and cold at the same time.

227. Other city officials have observed the maladies which occur in the workplace arising out of the discrimination and retaliation against Ms. Schiavoni by Defendants Marn and other member of Mentor City Council.

228. The headaches Ms. Schiavoni have suffered have been and continue to be debilitating and caused by the unrelenting retaliation by Defendant Marn and other members of Mentor City Council.

229. Ms. Schiavoni's feeling of helplessness while under the thumb of Defendant Marn is similar to the helplessness she endured during the violence of her prior marriage.

230. Because of the absence of process or procedures where female employees had an established policy against gender-based discrimination and retaliation, there is no means to secure a way of stopping a pattern of misogynistic practices which Defendant Marn practices.

## <u>COUNT X</u>

### <u>(Statutory Retaliation, Hostile Work Environment and Denial of Due Process)</u>

231. Plaintiff reasserts the foregoing allegations and incorporates them by reference as if fully set forth herein.

232. On November 15, 2022, Defendants Marn and Donovan attempted to limit how Ms. Schiavoni used earned vacation time by claiming that the finance and law departments brought it to their attention as part of a pattern of retaliation and intimidation against Ms. Schiavoni.

232. It is believed that no male employee has been subjected to similar treatment.

233. In checking with the Department of Finance, the department advised it had no complaint.

234. Defendants repeated the false assessment concerning earned vacation time in retaliation for the exercise of a federally protected right as part of a pattern of retaliation and intimidation against Ms. Schiavoni.

235. On November 17, 2022, Defendants Donovan and Marn met with the Law Department and Ms. Schiavoni, reasserting the false assessment of earned vacation time.

236. Defendant Marn became physical loud, threatening and intimidating and threatened to fire her if it weren't resolved.

237. Ms. Schiavone continued to suffer physically and emotionally as a consequence of the reckless, intentional and untruthful actions of Defendants Marn and Donovan.

## COUNT XI

### (Statutory Retaliation, Hostile Work Environment and Denial of Due Process)

238. Plaintiff reasserts the foregoing allegations and incorporates them by reference as if fully set forth herein.

239. On December 6, 2022, Defendant Marn again ranted on a livestreamed Council meeting about Ms. Schiavoni's receiving a pay-out of some of her earned vacation time with the intent to intimidate, humiliate and retaliate against her for the exercise of a federally protected right as part of a pattern of retaliation and intimidation against Ms. Schiavoni and without any ability because of the absence of process and procedure at the Defendant City of Mentor were Ms. Schiavoni could respond to Defendant Marn's baseless accusations.

240. The loud castigation and public humiliation of Ms. Schiavoni by Defendant Marn, in utilizing his superior position, sought to generate substantial anxiety and fear and did so, particularly as Ms. Schiavoni being a former victim of aggressive physical and emotional abuse.

241. The acts and conduct of Defendant Marn were reckless and intentional while he pursued a continuing pattern of discrimination and retaliation.

## COUNT XII

### (Sex Discrimination, Statutory Retaliation, Hostile Work Environment, Denial of Due Process and Defamation)

242. Plaintiff reasserts the foregoing allegations and incorporates them by reference as if fully set forth herein.

243. On February 22, 2023, Defendant Marn then intervened with Building Superintendent Lorne Vernon to tell him that Ms. Schiavoni was cut off from authority to authorize renovations which existed in the budget and for which she had been responsible where Marn has not subject any male employees to similar treatment.

244. The purpose and effect of Defendant Marn's intervention was to retaliate against her by reducing her by job responsibilities in retaliation for the exercise of a federally protected right as part of a pattern of retaliation and intimidation against Ms. Schiavoni.

245. The acts and conduct of Defendant Marn have been reckless and intentional which have had the purpose and effect of causing the continuing physical and emotional injury to Ms. Schiavoni.

## <u>COUNT XIII</u>
### <u>(Statutory Retaliation, Hostile Work Environment and Denial of Due Process )</u>

246. Plaintiff reasserts the foregoing allegations and incorporates them by reference as if fully set forth herein.

247. On March 15, 2023, Ms. Schiavoni's assistant disclosed that Defendant Donovan called her (the assistant) after hours and wanted to have a separate lunch with him about the operation of the office, then texted her, advising that he would have Defendant Marn attend as part of a pattern of retaliation and intimidation against Ms. Schiavoni.

248. The meeting was clearly set up in secret with Ms. Schiavoni assistant who reports to Ms. Schiavoni.

249. Defendants Marn and Donovan have done nothing similar to any male employee of the City of Mentor.

250. The "bigger issue" disclosed by the assistant was that Ms. Schiavoni had been suffering through the relentless retaliation and intimidation at the hands of Defendants Marn and Donovan with the silent acquiescence of the other members of Mentor City Council.

251. On March 21, 2023, Defendant Marn broadened his attempted intimidation and retaliation against Ms. Schiavoni by communicating with representatives of the Mentor Police Department and Mentor Fire Department labor personnel in restating the same untruthful claim he made over a year and a half before, from October 19, 2021, about supplemental pay for Ms. Schiavoni's being responsible for two jobs, while at the same time, Ms. Schiavoni was never provided any opportunity to rebut in order to demonstrate that what was being represented was untruthful and advanced solely to retaliate against Ms. Schiavoni for engaging in a right protected by federal law.

252. The meeting by Defendants Marn and Donovan was part of a relentless pattern of retaliation and intimidation against Ms. Schiavoni.

253. Defendant Marn's intent at the March 21st meeting was a discussion about a new proposed employment handbook for council employees, part of an unending retaliation in the same fashion he did on October 19, 2021 to diminish Ms. Schiavoni's status and

good reputation and retaliate for the exercise of a federally protected right as part of a pattern of retaliation and intimidation against Ms. Schiavoni.

254. The acts and conduct of Defendant Marn were reckless, intentional and untruthful the intention of diminishing Ms. Schiavoni reputation as a devoted and hard worker and as an honest person.

255. As a result of the actions of Defendant Marn, Ms. Schiavoni continues to suffer the consequences of Defendant Marn's actions with the silent acquiescence of the other members of Mentor City Council.

## COUNT XIV

## (Statutory Retaliation, Hostile Work Environment and Denial of Due Process )

256. Plaintiff reasserts the foregoing allegations and incorporates them by reference as if fully set forth herein.

257. On April 18, 2023, discussions took place among City Council members concerning the assistant's concerns in the office and also the EEOC charge filed by Ms. Schiavoni.

258. In retaliation for her charge, Defendants sought to replace Ms. Schiavoni's responsibility of creating policies for city council and to reduce Ms. Schiavoni's job responsibilities by creating instead a "Council Policies Committee" which would include removing the listed job duties of the Clerk of Council as part of a pattern of retaliation and intimidation.

259. On April 19, 2023, Defendant Marn forwarded a years-old, discredited email concerning a former legal assistant who had been fired that was intended to be part of a pattern of retaliation and intimidation against Ms. Schiavoni.

260. The acts and conduct of Defendant Marn were reckless, intentional and untruthful with the intention of diminishing Ms. Schiavoni reputation as a devoted and hard worker and as an honest person.

261. As a result of the actions of Defendant Marn, Ms. Schiavoni continues to suffer the consequences of Defendant Marn's actions with the silent acquiescence of the other members of Mentor City Council.

## COUNT XV

### (Statutory Retaliation and Hostile Work Environment)

262. Plaintiff reasserts the foregoing allegations and incorporates them by reference as if fully set forth herein.

262. On August 31, 2023, Ms. Schiavoni was to receive her past-due pin for 25 years of service and initially understood that it would be presented by the only female member of City Council, Jan Dowling.

263. Instead, Defendant Marn showed up and grabbed Ms. Schiavoni when the city photographer appeared for the presentation, bringing her close to him.

264. When Ms. Schiavoni saw it was the 30-year pin erroneously given to Mr. Marn to present, Ms. Schiavoni said she couldn't take it because her thirtieth year would have

been the following year (2024) and she was due her 25-year pin, but the ceremony was cancelled because of COVID.

265. Marn, pulling her closer with the photographer nearby whispered, smiling to cover his threat, "*You should have taken the 30 [-year pin], because . . . you never know.*"

266. Consistent with his acts and conduct of intimidation and retaliation by Defendant Marn, his action against Ms. Schiavoni was reckless and intentional while he pursued a continuing pattern of discrimination and retaliation and endeavored to increase her suffering.

## **COUNT XVI**

267. Plaintiff reasserts the foregoing allegations and incorporates them by reference as if fully set forth herein.

268. 127. In January, 2024, EEOC arranged to have an experienced Title VII lawyer handle a mediation between Ms. Schiavoni and the Mentor officials.

269. Defendant Blake advised that, in the event he was selected as president of Mentor City Council, her right to attend Executive Session meetings would be restored and the right to proceed with city hall renovations would also be restored.

270. On January, 2024, a private mediation took place among the parties, all of whom agreed to keep proposed terms of resolution confidential.

270. Thereafter, Defendant Marn disclosed a material element of a proposed settlement, despite a signed agreement with EEOC that the terms of the proposed settlement were

to be confidential as part of a pattern of retaliation and intimidation against Ms. Schiavoni.

271. Defendant then Blake revoked his promise to Ms. Schiavoni to return her to her position in Executive Sessions.

272. The turn-about was a function of the EEOC-sposored mediation which ultaimtely was unsuccessful.

273. Defendant Blake, with the silent acquiescence of Mentor City Council, admitted the correlation between Ms. Schiavoni asserting federally protected rights and her return to Executive Sessions in that it would not recur until "EEOC [the Title VII claim] is done," in retaliation for her exercise of federally protected rights.

274. The acts and conduct of Defendant Blake were reckless and intentional and in violation of her rights against statutory retaliation and a hostile work environment.

275. Ms. Schiavoni continues to suffer physical and emotional injury arising out of the wrongdoing of the defendants.

## <u>COUNT XVII</u>

### <u>(Breach of Confidentiality, Statutory Retaliation and Violation of Due Process Rights)</u>

276. Plaintiff reasserts the foregoing allegations and incorporates them by reference as if fully set forth herein.

277. Although the City of Mentor and the Mentor City Council have no formal policy and has had no formal substantive training concerning employment discrimination and

retaliation on the basis of sex and on the basis of other categories, they are nonetheless subject to the laws against discrimination and retaliation as set forth in the Ohio Revised Code and the United States Code.

278. Although the City of Mentor and the Mentor City Council have no formal policy and have had no formal substantive training concerning employment discrimination and retaliation on the basis of sex and on the basis of other categories, they are nonetheless subject to the Constitution of the United States which prohibits governmental discrimination and retaliation based on sex and on the basis of other categories and entitle governmental employees to due process of law under the Constitution of the United States.

279. All the Defendants are aware of the history of a pattern of sex discrimination and retaliation which have been asserted by the Plaintiff.

280. Defendants are aware of decades of disregard for the law protecting female employees against gender-based misconduct which have occurred with deliberate indifference to the rights of women working for the city and a reckless and undisguised tolerance by Mentor officials which have taken the form of humiliating events and ratifying sex-based remarks, touchings and disgusting gender-linked and biased displays and conversations.

281. The silent acquiescence by other Mentor members of Mentor City Council emboldened Defendant Marn to continue the pattern of sex-based harassment and degenerate behavior.

retaliation.

282. Virtually every elected member of Mentor City Council has been aware of the pressures placed on women government employees and other degenerate behavior at Mentor City Hall caused by Defendant Marn.

283. The silent acquiescence of the remaining Mentor City Council members has emboldened and continues to embolden Defendant Marn to engage in a pattern of sex-based misconduct and other degenerate behavior.

143. On September 7, 2024, consistent with decades of freely treating female government employees in a misogynistic manner, Defendant Marn sponsored on government property at the Mentor Lagoons Marina a publicly announced event, the *"Pimps & Hos"* poker run in which attendees were "encouraged" to dress appropriately with the theme.

284. Defendants have been conscious that their indifference has been and continues to be deliberate as silent bystanders to their colleague Marn's misconduct and other degenerate behavior.

285. As a direct result of the open pattern of discrimination and retaliation by Defendant Marn, encouraged and participated in by the silent acquiescence of the remaining defendant members of Mentor City Council and the City of Mentor itself, Plaintiff has suffered and continues to suffer despair, discomfort, humiliation and obstruction to her obligations in the workplace with no remedies available because of the absence of policy and training.

286. The acts and conduct of the defendants were and continue to be relentless, intentional, malicious and in wanton and reckless disregard of the rights and feelings of the plaintiff.

287. As a result of the acts and conduct of the Defendant, separately and collectively, Plaintiff Julie Schiavoni has suffered substantial emotional and mental distress and anxiety and continues to suffer as a result of retaliation for the exercise of state and federally protected rights and for the failure to take prompt, meaningful action to stop it.

WHEREFORE, Plaintiff Julie Schiavoni respectfully requests the Court to grant the following relief:

> A. Declare that the acts and conduct of the Defendants constitute violations of the anti-discrimination and anti-retaliation provisions of the Ohio Civil Rights Act, §§ 4112.01, *et seq.* (2024 Supp.), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-1, *et seq.*, (2024 Supp.), the Age Discrimination in Employment Act, 29 U.S.C. §§623, *et seq.*, as amended (2024 Supp.) and her rights to due process of law ensured under the Fourteenth Amendment to the Constitution of the United States;

> B. Grant to the Plaintiff and against the Defendants, individually and collectively, a permanent injunction enjoining Defendants, its officers, agents, employees, successors, assigns, and all persons in active concert of participation with it, from engaging in any future employment practices which have the purpose or effect of discrimination or retaliation on the basis of sex and for the exercise of protected rights under both the Ohio Civil Rights Act, Title VII and under the equal protection and due process clauses of the Fourteenth Amendment to the Constitution of the United States;

C. Order that Defendant City of Mentor, through its City Council adopt a policy against discrimination on the basis of sex, age and retaliation on the basis of sex and for the exercise of state and federally protected rights, to institute and to otherwise carry out policies, practices and programs which provide equal employment opportunities for all employees, and which eradicate the effects of its past and present unlawful employment practices;

D. Order Defendants expunge and otherwise remove from any and all files or records which reflect any adverse or negative inclusions of the Plaintiff including notes, writings or other documents by any one or all of the Defendants;

E. Order Defendant to make Plaintiff whole by providing appropriate back pay with prejudgment interest and for other affirmative relief necessary to eradicate the effects of its unlawful employment practices;

F. Grant to Plaintiff against all Defendants individually and collectively appropriate compensatory damages;

G. Grant to Plaintiff and against individual Defendants with the exception of Defendant City of Mentor appropriate punitive damages;

G. Award Plaintiff costs in this action including a statutory reasonable attorney fee and costs as provided by statute;

H. Grant such further relief as the Court deems just or equitable and in advance of the public interest.

/s/ *Avery Friedman*
Avery Friedman (0006103)
FRIEDMAN & ASSOCIATES
Suite 701, 850 Euclid Avenue
Cleveland, Ohio 44114-3358
T: 216.621.9282
F: 216/621.9283
E: avery@lawfriedman.com
   fairhousing@gmail.com

*Attorney for Plaintiff Julie Schiavoni*

## TRIAL BY JURY DEMANDED


/s/ Avery Friedman
Avery Friedman