**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JULIE A. SCHIAVONI, | ) | CASE NO. 1:24-cv-2090 |
| | ) | |
| Plaintiff, | ) | JUDGE CHARLES E. FLEMING |
| | ) | |
| v. | ) | |
| | ) | |
| SCOTT J. MARN, *et al.*, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendants. | ) | |
| | ) | |

Before the Court are three motions: (i) Defendants Matthew Donovan, John Krueger, Mark Freeman, Ray Kirchner, Janet Dowling, Sean Blake's (collectively, "Individual Defendants") motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) ("Individual MJOP"), (ECF No. 37); (ii) Defendant Scott Marn's motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) ("Marn MJOP"), (ECF No. 38); and (iii) Defendant City of Mentor's ("City") motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) ("City MJOP"), (ECF No. 41). Plaintiff Julie Schiavoni filed a timely omnibus opposition, (ECF No. 42), and Defendants filed their respective replies in support, (ECF Nos. 44, 45, 47). For the reasons discussed below, the Individual MJOP and City MJOP are **GRANTED**, the Marn MJOP is **GRANTED IN PART** and **DENIED IN PART**, and Plaintiff is **GRANTED** limited leave to file an amended complaint.

## I.      FACTUAL BACKGROUND[1]

Plaintiff has been an employee of the City for three decades, working several different positions until she was hired as Clerk of Council by the Mentor City Council in October 2016.

---

[1] The factual allegations that follow are contained within Plaintiff's amended complaint. (ECF No. 32). The Court must accept all plausible allegations as true because, at this stage of the proceeding, the Court must construe the allegations in a light most favorable to Plaintiff (the non-movant). *See Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 511–12 (6th Cir. 2001).

1

(ECF No. 32, PageID #350–52, 355, ¶¶ 16, 18–19, 23, 42–43).  Around October or November 2020, Marn came to Plaintiff's office and made inappropriate, offensive comments to Plaintiff's subordinate, the Assistant Clerk of Council.  (*Id.* at PageID #355, ¶¶ 46–47).  Plaintiff apologized to her subordinate and encouraged Marn to apologize but he did not.  (*Id.* at PageID #355–56, ¶¶ 48–49, 51).

After Plaintiff made a report of sexual harassment, Marn pushed for a disciplinary hearing against Plaintiff around September 2021.  (*Id.* at PageID #356, ¶¶ 51, 53–55).  This disciplinary hearing was ultimately cancelled by other members of the City Council.  (*Id.* at PageID #357, ¶ 56).  At the Mentor City Council meetings on October 19, 2021, and December 7, 2021, which were livestreamed to the public, Marn ridiculed Plaintiff and accused her of "theft in office," and "stealing from the taxpayers."  (*Id.* at PageID #357–58, ¶¶ 60–66).  In January 2022, Marn made remarks directly to Plaintiff about her age, that she would be "collateral damage," and that she should retire.  (*Id.* at PageID #358–59, ¶¶ 67, 69).  Marn also physically barred Plaintiff from entering an Executive Session of City Council.  (*Id.* at PageID #359, ¶¶ 70–72).

In Spring or Summer 2022, Marn tapped Plaintiff on her arm during a City Council meeting and drew her attention to his cellphone which was displaying a close-up photograph of a woman's naked breasts.  (*Id.* at PageID #361, ¶ 84).  In November 2022, Marn and Donovan made false claims about Plaintiff's use of earned vacation time and Marn threatened to fire Plaintiff during a meeting with the City's law department.  (*Id.* at PageID #363–64, ¶¶ 96–100).  At a Council meeting on December 6, 2022, Marn talked about Plaintiff receiving a pay-out of some of her earned vacation time.  (*Id.* at PageID #364, ¶ 102).  At the end of 2022, Plaintiff "had formally filed intake information concerning her allegations of sex discrimination, age discrimination and

2

statutory retaliation with the United States Equal Employment Opportunity Commission (EEOC)."
(*Id.* at PageID #364, ¶ 101).

In February 2023, Marn told Building Superintendent Lorne Vernon that Plaintiff did not have authority to authorize renovations for which she had been responsible.  (*Id.* at PageID #364–65, ¶ 104).  In March 2023, Marn restated untruthful claims about Plaintiff's supplemental pay to representatives of the Mentor Police Department and Mentor Fire Department labor representatives.  (*Id.* at PageID #365–66, ¶ 108).  In April 2023, Defendants created a "Council Policies Committee" for the purpose of removing the listed job duties of the Clerk of Council (Plaintiff's position) and Marn "forwarded" an old, discredited email concerning a former legal assistant.  (*Id.* at PageID #366–67, ¶¶ 114–15).  In June 2023, Donovan, Freeman, and Dowling met to cut Plaintiff's job description, eliminate responsibilities of her position, and force the position to become part-time.  (*Id.* at PageID #367, ¶ 116).  Around the same time, Marn began to have his bills processed by Plaintiff's assistant, even though it was a function of Plaintiff's job.  (*Id.* ¶¶ 118–19).

In August 2023, when Plaintiff was set to receive a 25-year service pin, Marn showed up and grabbed Plaintiff.  (*Id.* at PageID #368, ¶¶ 120–21).  When Plaintiff saw that Marn had been given a 30-year pin to present to Plaintiff, Plaintiff stated she could not take the 30-year pin and Marn pulled her close and whispered, "You should have taken the 30 [-year pin], because . . . you never know."  (*Id.* ¶ 122).  In January 2024, a private mediation arranged by the EEOC took place and the parties agreed to keep the proposed terms of resolution confidential.  (*Id.* ¶¶ 123, 125).  Afterward, Marn disclosed material terms of the proposed settlement and no action was taken against him.  (*Id.* at PageID #369, ¶¶ 126–27).  On March 31, 2024, Blake, the newly selected Council President, declined to permit Plaintiff to attend an Executive Session meeting and stated

Plaintiff's attendance was barred until her EEOC claim was resolved. (*Id.* ¶¶ 128–29). On September 7, 2024, Marn publicly announced and sponsored a "Pimps & Hos" poker run, in which attendees were "encouraged" to dress appropriately with the theme and was to be held on government property at the Mentor Lagoons Marina. (*Id.* at PageID #371, ¶ 140).

## II. PROCEDURAL BACKGROUND

On December 2, 2024, Plaintiff filed a complaint against Marn, the City, and the Individual Defendants. (ECF No. 1). Plaintiff asserted claims based on statutory retaliation, discrimination, assault, battery, gender-based misconduct, hostile work environment, denial of due process, defamation, and breach of confidentiality. (*Id.* at PageID #26–50). On April 29, 2025, the Individual Defendants filed an initial motion for judgment on the pleadings. (ECF No. 17). The Court issued an order that: (i) partially granted the Individual Defendant's motion; (ii) dismissed all claims asserted against the Individual Defendants under Title VII, the Ohio Civil Rights Act ("OCRA"), and the ADEA[2] with prejudice; (iii) dismissed all due process claims against the Individual Defendants based on Title VII with prejudice; and (iv) ordered Plaintiff to file a more definite statement in the form of an amended complaint.[3] (ECF No. 30).

On August 22, 2025, Plaintiff filed an amended complaint against Marn, the City, and the Individual Defendants. (ECF No. 32). The amended complaint asserts fourteen counts, with most containing multiple claims therein, as illustrated by the following chart:

| COUNT | CLAIM(S) | LEGAL BASIS | DEFENDANT |
|---|---|---|---|
| I | Hostile Work Environment | Ohio Rev. Code § 4112; Title VII | Marn; City |

---

[2] The Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, *et seq.*
[3] The Court found that Plaintiff's complaint was an impermissible "shotgun pleading" that did not comply with Fed. R. Civ. P. 8 and 10(b). (ECF No. 30, PageID #388–42). Noting that it was unclear what claims or causes Plaintiff was asserting under each count, and that Plaintiff was asserting multiple causes of action under each count, the Court stated that "[s]eparation of Plaintiff's claims in this case would promote clarity, facilitate clear presentation of the claims, and provide proper notice to Defendants." (*Id.* at PageID #338–40).

| II | Statutory Retaliation and Hostile Work Environment | Ohio Rev. Code § 4112; Title VII | Marn; City |
|----|----|----|----|
| III | Statutory Retaliation and Hostile Work Environment | Ohio Rev. Code § 4112; Title VII | Marn; City |
| III | Denial of Due Process | § 1983; 14th Amendment | Defendants |
| III | Defamation | Ohio Rev. Code § 2739.01 | Marn |
| IV | Statutory Retaliation and Hostile Work Environment | Ohio Rev. Code § 4112; Title VII | Marn; City |
| IV | Denial of Due Process | § 1983; 14th Amendment | Defendants |
| IV | Defamation | Ohio Rev. Code § 2739.01 | Marn |
| V | Statutory Retaliation and Hostile Work Environment | Ohio Rev. Code § 4112; Title VII | Marn; City |
| VI | Age Discrimination; Statutory Retaliation and Hostile Work Environment | ADEA; Ohio Rev. Code § 4112; Title VII | Marn; City |
| VII | Statutory Retaliation and Hostile Work Environment | Ohio Rev. Code § 4112; Title VII | Marn; City |
| VIII | Statutory Retaliation and Hostile Work Environment | Ohio Rev. Code § 4112; Title VII | Marn; City |
| VIII | Assault and Battery | Ohio law | Marn |
| IX | Statutory Retaliation and Hostile Work Environment | Ohio Rev. Code § 4112; Title VII | Marn; City |
| X | Statutory Retaliation and Hostile Work Environment | Ohio Rev. Code § 4112; Title VII | Marn; City |
| X | Denial of Due Process | § 1983; 14th Amendment | Defendants |
| X | Defamation | Ohio Rev. Code § 2739.01 | Marn |
| XI | Statutory Retaliation and Hostile Work Environment | Ohio Rev. Code § 4112; Title VII | Marn; City |
| XII | Statutory Retaliation and Hostile Work Environment | Ohio Rev. Code § 4112; Title VII | Marn; City |
| XII | Battery | Ohio Law | Marn |
| XIII | Statutory Retaliation and Hostile Work Environment | Ohio Rev. Code § 4112; Title VII | Marn; City |
| XIV | Hostile Work Environment, Discrimination and Retaliation | ADEA; Ohio Rev. Code § 4112; Title VII | Marn; City |
| XIV | Denial of Due Process | § 1983; 14th Amendment | Defendants |

(*Id.* at PageID #373–406).

On September 19, 2025, the Individual Defendants filed the Individual MJOP, in which they seek the dismissal of the four due process claims asserted against them in the amended complaint (Counts III, IV, X, and XIV), as well as their dismissal from this action.  (ECF No. 37).  On September 23, 2025, Marn filed the Marn MJOP seeking dismissal of the amended complaint

5

in its entirety.  (ECF No. 38).  On October 27, 2025, the City filed the City MJOP, which seeks dismissal of all claims against the City in the amended complaint.  (ECF No. 41).  Plaintiff filed an omnibus opposition to all three MJOPs.  (ECF No. 42).  The Individual Defendants, Marn, and the City each filed replies in support of their respective MJOPs.  (ECF Nos. 44, 45, 47).

## III.    STANDARD OF REVIEW

After the pleadings are closed, a party may move for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), which is essentially a delayed motion to dismiss under Rule 12(b)(6) and is evaluated under the same standards.  *See Anders v. Cuevas*, 984 F.3d 1166, 1174 (2021).  Because the standards are the same, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Solo v. UPS Co.*, 819 F.3d 788, 793 (6th Cir. 2016 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)).  Judgment on the pleadings is appropriate where, construing the material allegations of the pleadings and all reasonable inferences in the light most favorable to the non-moving party, the Court concludes that the moving party is entitled to judgment as a matter of law.  *Anders*, 984 F.3d at 1174.  In construing the pleadings, the Court accepts the factual allegations of the non-movant as true, but not unwarranted inferences or legal conclusions.  *Holland v. FCA US LLC*, 656 F. App'x 232, 236–37 (6th Cir. 2016) (citing *Gregory v. Shelby Cnty.*, 220 F.3d 433, 446 (6th Cir. 2000)).

In deciding a motion under Rule 12(c), courts "must follow the Supreme Court's changes to the pleading standards in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)."  *Bates v. Green Farms Condo. Assoc.*, 958 F.3d 470, 480 (6th Cir. 2020) (citing *Engler v. Arnold*, 862 F.3d 571, 575 (6th Cir. 2017)).  Only "well-pleaded factual allegations" that "plausibly give

6

rise to an entitlement of relief" and "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" will survive. *Id.* (quotation and citation omitted). Rule 8(a)(2) provides that the complaint should contain a short and plain statement of the claim, but that it should be more than a "the-defendant-unlawfully-harmed-me" accusation. *Id.* at 677–78 (citing *Twombly*, 550 U.S. at 555). A plaintiff must provide sufficient grounds to show entitlement to relief; "labels, conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)). Although a complaint need not contain detailed factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the Complaint are true." *Id.* When reviewing a complaint, a court must construe the pleading in the light most favorable to the plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998).

When deciding a motion to dismiss under Rule 12(b)(6) or Rule 12(c), generally, the Court cannot consider matters outside the pleadings, unless the motion is converted to a motion for summary judgment under Rule 56. *See* Fed. R. Civ. P. 12(d). Still, the Court may consider exhibits attached to or otherwise incorporated in the complaint without converting a Rule 12(b) or (c) motion to dismiss into a motion for summary judgment. Fed. R. Civ. P. 10(c); *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997).

## IV.  DISCUSSION

### A.  Individual MJOP

The only claims asserted against the Individual Defendants in the amended complaint are the "Denial of Due Process" claims asserted in Counts III, IV, X, and XIV. For each of these claims, the amended complaint identifies the underlying protected liberty interest at issue as:

7

(i) Plaintiff's good name and reputation; and (ii) "her statutory entitlement to be free from retaliation for the exercise of a protected right under Title VII of the Civil Rights Act of 1964 and the Ohio Civil Rights Act without notice and the opportunity to be heard."  (ECF No. 32, PageID #379, 383, 396, 405–06).  The Individual Defendants first argue that these due process claims should be dismissed against them because the Court previously dismissed these claims with prejudice.  (ECF No. 37, PageID #475).  Plaintiff responds that the Court's previous order only disposed of due process claims based on Title VII, not those claims based on liberty or property interests such as her reputation.  (ECF No. 42, PageID #539).

The Court finds that the portion of Plaintiff's due process claims against the Individual Defendants related to the "statutory entitlement to be free from retaliation" are barred by the law-of-the-case doctrine.  While *res judicata* prevents relitigation of matters decided in a previous proceeding, the law-of-the-case doctrine provides that once a court has decided an issue during a proceeding, the same court should adhere to that determination in later stages of the same case. *Howe v. City of Akron*, 801 F.3d 718, 739 (6th Cir. 2015); *GMAC Mortg., LLC v. McKeever*, 651 F. App'x 332, 338–39 (6th Cir. 2016).  "The purpose of the law-of-the-case doctrine is to ensure that the *same* issue presented a second time in the *same case* in the *same court* should lead to the *same result*."  *Howe*, 801 F.3d at 739 (emphasis in original) (internal quotation marks omitted).  This doctrine is likewise meant to promote consistent rulings and judicial economy.  *GMAC Mortg., LLC*, 651 F. App'x at 338–39.  In its July 24, 2025 Memorandum Opinion and Order, the Court dismissed the due process claims asserted against the Individual Defendant because Plaintiff was asserting an alleged protected interest based on the statutory entitlement to be free of gender discrimination and retaliation under Title VII.  (ECF No. 30, PageID #335–37).  The Court stated: "Because Plaintiff asserts specific rights and interests protected under a federal statute (Title VII),

instead of a liberty or property interest protected under the Constitution, her due process claims, whether substantive or procedural in nature, fail as a matter of law." (*Id.* at PageID #336 (citing *EJS Properties, LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012)). In the amended complaint, Plaintiff again attempts to assert a protected liberty interest in rights created under a federal statute (Title VII), as well as the Ohio state-law analog (the OCRA).[4] Because the Court previously dismissed these claims against the Individual Defendants, they are barred by the law-of-the-case doctrine.

As for the remaining due process claims based on the protected liberty interest in Plaintiff's good name and reputation, such claims are not barred by the law-of-the-case doctrine. The Individual Defendants argue that Plaintiff's due process claims based on her reputation still fail as a matter of law. They argue that these claims should be dismissed because: (i) injury/defamation alone are insufficient; (ii) Plaintiff is only entitled to a "name-clearing hearing" if she suffered a termination, demotion, or transfer, none of which occurred here; and (iii) she never requested a name-clearing hearing. (ECF No. 37, PageID #475–78). In response to the first argument, Plaintiff argues that she has asserted a viable liberty interest under the "stigma plus" test set forth in *Paul v. Davis*[5] because her name/reputation were damaged while her rights against retaliation and discrimination under Title VII, the ADEA, and equivalent Ohio statutes were altered or extinguished. (ECF No. 42, PageID #548).

---

[4] A cause of action for discrimination and retaliation under both Title VII and the OCRA are identical. *See Carter v. Univ. of Toledo*, 349 F.3d 269, 272 (6th Cir. 2003) (citing *Ohio Civil Rights Comm'n v. Ingram*, 69 Ohio St. 3d 89, 1994 Ohio 515, 630 N.E.2d 669, 674 (Ohio 1994)); *McBroom v. Barnes & Noble Booksellers, Inc.*, 747 F. Supp. 2d 906, 913 (N.D. Ohio 2010) (noting that the law governing a Title VII retaliation claim is the same as a retaliation claim under the OCRA); *see also Shoemaker-Stephen v. Montgomery Cnty. Bd. of Comm'rs*, 262 F. Supp. 2d 866, 874 (S.D. Ohio 2003) ("Title VII prohibits an employer from discriminating against an employee, with respect to the terms, conditions, and privileges of one's employment, on the basis of sex. Ohio Rev. Code § 4112.02(A) prohibits the same conduct as a matter of State law, and is generally construed in identical fashion to Title VII.") (citations omitted).

[5] 424 U.S. 693, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976).

"The Due Process Clause of the Fourteenth Amendment protects an individual's liberty interest in their 'reputation, good name, honor, and integrity.'" *Crosby v. Univ. of Ky.*, 863 F.3d 545, 555 (6th Cir. 2017) (quoting *Quinn v. Shirey*, 293 F.3d 315, 319 (6th Cir. 2002)).  However, in the public employment context, damage to one's reputation alone is insufficient "to invoke the procedural protection of the Due Process Clause." *See Paul v. Davis*, 424 U.S. 693, 701, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976).  Plaintiffs must satisfy the "stigma-plus" test set forth in *Paul*, under which they must demonstrate that "the state's action both damaged his or her reputation (the stigma) and that it 'deprived [him or her] of a right previously held under state law' (the plus)." *Doe v. Mich. Dep't of State Police*, 490 F.3d 491, 501–02 (6th Cir. 2007) (quoting *Paul*, 424 U.S. at 701, 708) (alterations in original).  In other words, "[u]nder this test, plaintiffs can establish a liberty interest subject to due-process protections *only* if they identify a harmful 'effect' on a more 'tangible' item—such as a "right or status previously recognized by state law'—in addition to the harm to their reputation." *Pichiorri v. Burghes*, 162 F.4th 745, 753–54 (6th Cir. 2025) (quoting *Paul*, 424 U.S. at 701, 711) (emphasis added).

Plaintiff contends that the "plus" under the test is satisfied because the defamatory statements made by Defendants violated her rights against retaliation and discrimination under Title VII, the ADEA, and equivalent Ohio statutes.  The Court finds that these are not sufficient "tangible" interests to satisfy the stigma-plus test.  The Court has also found no cases to the contrary.  Plaintiff argues that the violation of her rights against discrimination and retaliation is sufficient because in *Paul*, the Supreme Court "relied heavily on the reasoning *of Bell v. Burson*, 402 U. S. 535 . . . and *Morrissey v. Brewer*, 408 U. S. 471 (1972) . . . ." (ECF No. 42, PageID #549).  The Court finds Plaintiff's argument unpersuasive because the *Paul* Court found the rights at issue in *Bell* (the right to operate a vehicle on the highways of the State) and *Morrissey* (the

status of a parolee) were rights that were themselves specifically protected by the procedural guarantees of the Due Process Clause.  *Paul*, 424 U.S. at 710–12.  As the Court concluded in its prior Memorandum Opinion and Order, Plaintiff's statutory rights to be free from discrimination and retaliation under federal and state law are not a protected liberty or property interest sufficient to invoke the protections of the Due Process Clause.  (*See* ECF No. 30, PageID #335–37); *see EJS Properties, LLC*, 698 F.3d at 855; *Swihart v. Wilkinson*, 209 F. App'x 456, 458 (6th Cir. 2006) (providing that a plaintiff bringing a § 1983 procedural due process claim "must show that the state deprived him or her of a constitutionally protected interest . . . without due process of law").

Even if a violation for Plaintiff's statutory rights to be free from retaliation and discrimination were sufficient, her claims would still fail as a matter of law because there are no allegations or evidence that Plaintiff requested a name-clearing hearing.  Plaintiff argues that there is no authority establishing that a plaintiff must request a name-clearing hearing when there is no termination of employment involved.  (ECF No. 42, PageID #549–50).  The Court finds this argument unavailing.  "The fundamental requirement of [procedural] due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S. Ct. 1187, 14 L. Ed. 2d 62 (1965)).  The Supreme Court has held that "'[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.'"  *Bd. of Regents v. Roth*, 408 U.S. 564, 573, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972) (quoting *Wisconsin v. Constantineau*, 400 U.S. 433, 437, 91 S. Ct. 507, 27 L. Ed. 2d 515 (1971)).

In the context of stigma plus claims, the Sixth Circuit has consistently held that a plaintiff must request and then be denied a name-clearing hearing before asserting a procedural due process

claim.  *See Quinn*, 293 F.3d at 323–24 ("[A] plaintiff must request and be denied a name-clearing hearing in order to have been deprived of a liberty interest without due process."); *Umfress v. City of Memphis*, No. 20-6115, 2021 U.S. App. LEXIS 20367, at *8 (6th Cir. July 7, 2021) ("Denial of a name-clearing hearing is the violation of procedural due process that creates a stigma-plus cause of action."); *Moore v. City of Cleveland*, 812 F. App'x 299, 302 (6th Cir. 2020) ("In addition, before bringing suit, a plaintiff must request a name-clearing hearing and be denied that request."). An employer does not have an affirmative duty to advise or apprise an employee of her right to a name-clearing hearing.  *Kaplan v. Univ. of Louisville*, 10 F.4th 569, 584–85 (6th Cir. 2021) (citing *Quinn*, 293 F.3d at 323).  While Sixth Circuit cases generally involve stigma plus claims in the context of an employee's termination, the principle is equally applicable to all sufficient deprivations of a tangible liberty or property interest (the plus portion of the claim).

Plaintiff generally misunderstands the nature of her alleged due process claims.  For any alleged defamatory statements or alleged discrimination or retaliation in violation of federal or state statutes, there are distinct and separate causes of action which assign liability and provide an adequate remedy for such harms (*e.g.*, defamation, Title VII, etc.).  A due process claim, specifically a "stigma plus" claim, addresses a separate harm: the denial of a procedural protection with relation to the allegedly false statements.  Here, the procedural protection would be the ability to clear one's name/refute the allegedly false statements and the violation would be the denial of a name-clearing hearing.  Without Plaintiff requesting a name-clearing hearing (or otherwise requesting an opportunity to refute the alleged defamatory statements), and Defendant subsequently denying that request, there can be no denial of due process by Defendants.  Thus, Plaintiff's failure to request a name-clearing is fatal to her stigma plus claims.  Accordingly, the Individual MJOP is (ECF No. 37) is **GRANTED** and the Individual Defendants are **GRANTED**

12

judgment in their favor on the due process claims asserted against them in Counts III, IV, X, and XIV.  As a result, the Individual Defendants are **DISMISSED** from this action.

### B.    City MJOP

#### 1.    *ADEA Discrimination Claims – Counts VI and XIV*

The City argues that Plaintiff cannot sustain her claims for discrimination under the ADEA because she does not allege an adverse employment action.[6]  (ECF No. 41-1, PageID #526–28). Plaintiff does not address this argument.[7]  Because she offered no opposition in response to the arguments for dismissal of the ADEA discrimination claims raised by the City, Plaintiff has abandoned her ADEA claims and waived any argument in opposition to the dismissal of those claims.  *See Humphrey v. U.S. Att'y Gen.'s Office*, 279 F. App'x 328, 331 (6th Cir. 2008) (holding that a plaintiff's failure to oppose arguments raised in the defendants' motion to dismiss is grounds for the district court to find that opposition to the motion is waived); *Crable v. City of Cleveland*, No. 1:23-cv-978, 2024 U.S. Dist. LEXIS 27008, at *12 (N.D. Ohio Feb. 16, 2024) ("Generally, a plaintiff abandons a claim where he fails to respond to a defendant's motion to dismiss that claim.") (collecting cases);  *Ullmo v. Ohio Tpk.*, 126 F. Supp. 3d 910, 919 (N.D. Ohio 2015) (finding that a plaintiff abandoned a claim where he failed to respond to defendant's motion to dismiss); *Santo's Italian Café LLC v. Acuity Ins.*, 508 F. Supp. 3d 186, 207 (N.D. Ohio 2020) (quoting *Lewis v. Cleveland Clinic Found.*, No. 1:12-cv-3003, 2013 U.S. Dist. LEXIS 168836, at *11 (N.D. Ohio Nov. 27, 2013) ("It is well understood . . . that when a plaintiff files an opposition to a dispositive

---

[6] The City also argues that Plaintiff fails to allege an adverse employment action to support discrimination claims under the OCRA.  (ECF No. 41-1, PageID #526–28).  The Court will not address that argument because the Court finds that Plaintiff does not assert any OCRA discrimination claims in the amended complaint, only retaliation claims. Only Count XIV labels itself, in part, as a "discrimination" claim, and Plaintiff specifically clarifies that she is only bringing procedural due process, retaliation, and hostile work environment claims under that count.  (*See* ECF No. 32, PageID #402–06).

[7] Plaintiff's opposition solely puts forth arguments addressing her *retaliation* claims under the ADEA, OCRA, and Title VII.  (*See* ECF Doc. 42, PageID #543–47).

motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.")).  Accordingly, the ADEA claims asserted against the City in Counts VII and XIV are **DISMISSED WITH PREJUDICE**.

### 2. *Due Process Claims - Counts III, IV, X, and XIV*

The City argues, in part, that Plaintiff's due process claims should be dismissed because Plaintiff's alleged "statutory entitlement to be free from retaliation for the exercise of a protected right under Title VII of the Civil Rights Act of 1964 and the Ohio Civil Rights Act without notice and the opportunity to be heard" does not constitute a protected property or liberty interest under the Fourteenth Amendment.  (ECF No. 41-1, PageID #520–22).  Plaintiff does not provide any opposition to this argument, focusing solely on Defendants' "stigma plus" arguments.  (ECF No. 42, PageID #548–53).  Thus, Plaintiff has abandoned any due process claim based solely on violations of Title VII and the OCRA and waived any opposition to their dismissal.  *See Humphrey*, 279 F. App'x at 331; *Crable*, 2024 U.S. Dist. LEXIS 27008, at *12; *Ullmo*, 126 F. Supp. 3d at 919.  Regardless, for the same reason set forth in the Court's July 24, 2025 Memorandum Opinion and Order, any due process claims based on violations of rights protected under Title VII, and the state-law analog OCRA, fail as a matter of law because they do not involve a protected liberty or property interest under the Constitution.  (*See* ECF No. 30, PageID #335–37).  Thus, any such due process claims asserted against the City are **DISMISSED WITH PREJUDICE**.

The City also argues that Plaintiff's reputation/"stigma plus" due process claims should be dismissed.  (ECF No. 41-1, PageID #517–22).  For the same reasons discussed regarding the Individual Defendants, Plaintiff's reputation based, "stigma plus" due process claims fail as a matter of law.  Accordingly, the Court **DISMISSES** all due process claims against the City.

14

3.      *Hostile Work Environment Claims – Counts I–XIV*

Plaintiff brings her hostile work environment claims pursuant to Title VII, the ADEA, and Ohio Rev. Code § 4112.  A plaintiff cannot bring a claim under Title VII or the ADEA without first bringing that claim in an EEOC charge.  *See Hayes v. Clariant Plastics & Coatings USA, Inc.*, 144 F.4th 850, 865 (6th Cir. 2025) (Title VII); *Davis v. Sodexho*, 157 F.3d 460, 463 (6th Cir. 1998) (ADEA).  Similarly, a plaintiff must exhaust discrimination claims under Ohio Rev. Code § 4112 by first filing a charge with the Ohio Civil Rights Commission ("OCRC") and obtaining a right-to-sue letter from that commission before filing suit.  *See* Ohio Rev. Code § 4112.052(B)(1).

On April 17, 2023, Plaintiff filed a Charge of Discrimination with the OCRC and the EEOC ("EEOC Charge"), alleging age discrimination and retaliation for engaging in a protected activity. (ECF No. 41-3).  The City argues that Plaintiff's hostile work environment claims must be dismissed because she did not file any such claims in the EEOC Charge and therefore failed to exhaust her administrative remedies.  (ECF No. 41-1, PageID #522–26).  The City contends that Plaintiff's hostile work environment claims do not reasonably grow out of the retaliation and age discrimination claims asserted in the EEOC Charge and the EEOC Charge contains no allegations that Plaintiff was subjected to sex discrimination or a sexually hostile work environment.  (*Id.* at PageID #524–260.  Plaintiff does not explicitly or directly address the City's arguments concerning exhaustion in her opposition.  In fact, her opposition does not mention exhaustion, does not address the assertions and allegations in the EEOC Charge, and does not present arguments as to whether the instant hostile work environment claims reasonably grow out of the allegations in the EEOC Charge.

Plaintiff does argue, albeit in a footnote, that she was not required to submit every continuing on-going act of gender-related discrimination and retaliation in separate charges before

the EEOC.  (*See* ECF No. 42, PageID #541 n.2).  That said, even if this were considered as an argument addressing the administrative exhaustion issue raised by the City, which the Court does not, arguments raised in a footnote or in a perfunctory manner, such as this, are considered improper and deemed waived.  *See United States v. Johnson*, 440 F.3d 832, 845–46 (6th Cir. 2006); *see also Tax-Free Fixed Income Fund for P.R. Residents, Inc. v. Ocean Cap. LLC*, 137 F.4th 6, 24 (1st Cir. 2025) ("[A]rguments raised only in a footnote or in a perfunctory manner are waived."); *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 356 n.7 (5th Cir. 2003) (same); *United States v. Hardman*, 297 F.3d 1116, 1131 (10th Cir. 2002) (same).  Thus, Plaintiff has abandoned her hostile work environment claims and waived any opposition to their dismissal.  *See Humphrey*, 279 F. App'x at 331; *Crable*, 2024 U.S. Dist. LEXIS 27008, at \*12; *Ullmo*, 126 F. Supp. 3d at 919.

Even if Plaintiff hadn't waived opposition to the dismissal of her hostile work environment claims, the Court finds that these claims would still fail as a matter of law.  "[B]ecause aggrieved employees -- and not attorneys -- usually file charges with the EEOC, their *pro se* complaints are construed liberally, so that courts may also consider claims that are reasonably related to or grow out of the factual allegations in the EEOC charge."  *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 362 (6th Cir. 2010) (citing *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 732 (6th Cir. 2006)); *see also Milczak v. GM, LLC*, 102 F.4th 772, 782 (6th Cir. 2024).  "As a result, 'whe[n] facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim.'"  *Younis*, 610 F.3d at 362 (quoting *Davis v. Sodexho*, 157 F.3d 460, 463 (6th Cir. 1998)) (alteration in original).

Because the EEOC Charge did not expressly include a claim for hostile work environment, it could only satisfy the exhaustion requirement for Plaintiff's instant hostile work environment

16

claims if those claims were "reasonably related to or could have grown out of the factual allegations in the charge." *Russ v. Memphis Light Gas & Water Div.*, 720 F. App'x 229, 238 (6th Cir. 2017) (citing *Younis*, 610 F.3d at 362).  Reviewing the EEOC Charge, the Court finds that the EEOC and OCRC were not put on sufficient notice of Plaintiff's instant hostile work environment claims.  "Though the captions outlining her EEOC charge are not dispositive, they are some evidence of which claims [Plaintiff] was seeking to pursue before the EEOC." *Scott v. Eastman Chem. Co.*, 275 F. App'x 466, 474 (6th Cir. 2008).

In the EEOC Charge, Plaintiff alleges that she filed a sexual harassment complaint for a subordinate employee, since that filing she has been subjected to harassment, "including but not limited to, being ridiculed, belittled, and embarrassed in council meetings by Scott Marn and Matthew Donovan[,]" and she was informed she "would be collateral damage and possibly discharged because of [her] age." (ECF No. 41-3, PageID #535).  It then specifically alleges: "I believe I was discriminated against because of my age, Year of Birth:1957, and retaliated against for engaging in a protected activity, in violation of the Age Discrimination in Employment Act of 1967, as amended." (*Id.* at PageID #536).

The EEOC Charge explicitly states a claim for age discrimination and retaliation. Although it sets out specific acts of harassment (ridicule, belittlement, and embarrassment by Marn and Donovan at council meetings), there is no allegation or indication that Plaintiff personally suffered discrimination based on her gender or sex.  Moreover, the allegations of those discrete acts of harassment are insufficient to raise a hostile work environment claim in an EEOC charge because they do not demonstrate sufficient pervasive discriminatory conduct. *See Younis*, 610 F.3d at 362 ("[T]he inclusion in an EEOC charge of a discrete act or acts, standing alone, is insufficient to establish a hostile-work-environment claim for purposes of exhaustion."); *Hayes v.*

17

*Clariant Plastics & Coatings USA, Inc.*, 144 F.4th 850, 865 (6th Cir. 2025).  Although Plaintiff's footnote points to other alleged instances of gender-related discrimination and retaliation by Defendants, these factual allegations were not included in the EEOC Charge (as noted by Defendants).  (ECF No. 41-1, PageID #525–26).

The Court finds that it was not reasonable to expect the EEOC and OCRC to investigate any claims of hostile work environment because such claims did not naturally grow out of the age discrimination and retaliation claims alleged in the EEOC Charge.  Nor is there any evidence that the EEOC or the OCRC actually investigated Plaintiff's hostile work environment claims.  *See Scott v. Eastman Chem. Co.*, 275 F. App'x 466, 474–75 (6th Cir. 2008).  The Court therefore finds that Plaintiff did not exhaust her hostile work environment claims.  Accordingly, the hostile work environment claims against the City in Counts I–XIV are **DISMISSED WITHOUT PREJUDICE**.

> *4.      Retaliation Claims under Title VII, OCRA, and the ADEA*

In Counts II through XIV, Plaintiff asserts claims for statutory retaliation under Title VII and the OCRA.  (ECF No. 32, PageID #375–406).  She also asserts claims for retaliation under the ADEA in Counts VI and XIV.  Title VII prohibits employers from retaliating against employees who oppose discriminatory employment practices.  42 U.S.C. § 2000e-3(a).  Both the ADEA and OCRA contain similar anti-retaliation provisions, and apply the same burden-shifting framework, such that retaliation claims under all three statutes can be analyzed together.  *See Russell v. Univ. of Toledo*, 537 F.3d 596, 604 (6th Cir. 2008); *Fox v. Eagle Distrib. Co.*, 510 F.3d 587, 591 (6th Cir. 2007) ("We have explained that Title VII's anti-retaliation provision is similar in relevant respects to the ADEA's anti-retaliation provision, and that it is therefore appropriate to look to cases construing Title VII as a source of authority for interpreting the ADEA's anti-

retaliation clause."); *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 469 (6th Cir. 2002) ("In analyzing claims arising under Ohio Rev. Code § 4112, Ohio courts have adopted the framework established in federal case law concerning Title VII and the [ADEA]."); *see also Lindsey v. Whirlpool Corp.*, 295 F. App'x 758, 758 n.1 (6th Cir. 2008) ("The Ohio Civil Rights Act mirrors Title VII in all relevant respects for Plaintiff's discrimination and retaliation claims.").  For Plaintiff to make a prima facie case for her retaliation claims, she is required to show that: (1) she engaged in protected activity, (2) her employer knew about it, (3) her employer took an adverse employment action against her, and (4) there is a causal connection between the protected activity and adverse action. *Warf v. United States VA*, 713 F.3d 874, 880 (6th Cir. 2013) (Title VII); *Fox*, 510 F.3d at 591 (ADEA); *Greer-Burger v. Temesi*, 2007-Ohio-6442, 116 Ohio St. 3d 324, 879 N.E.2d 174, 180 (Ohio 2007) (OCRA).

The City argues that Plaintiff's retaliation claims in Counts I through XIV fail as a matter of law because she failed to plead a materially adverse employment action (a necessary element to support her claims).[8]  (ECF No. 41-1, PageID #528–32).  The City argues that each of the following categories of alleged actions do not qualify as adverse employment actions sufficient to sustain a claim of retaliation: (i) threats that never materialized; (ii) negative comments during public meetings; (iii) seeking to temporarily move Plaintiff to a vacant office; (iv) disclosing an element of a proposed settlement; and (v) showing a lewd screensaver to Plaintiff.  (*Id.* at PageID #529–32). Plaintiff argues that an attempted retaliatory disciplinary hearing, the personal public attacks by Marn, the attempted office move, and Marn showing the lewd screensaver to Plaintiff are all

---

[8] Although the City states that the retaliation claims under Title VII and the OCRA fail, and it does not mention the single retaliation claims under the ADEA in Counts VI and XIV, the Court finds that the arguments equally apply to the single claim under the ADEA and grants the City the benefit of the doubt given the confusing pleading style of the amended complaint and the City having previously raised the argument that the ADEA claims for discrimination fail because of the lack of an adverse employment action.

19

sufficient adverse employment actions because they would dissuade a reasonable worker from making or supporting a charge of discrimination. (ECF No. 42, PageID #543–47). The City replies that the four "*de minimis* employment actions" cited in Plaintiff's opposition are not materially adverse and insufficient to support a claim of retaliation. (ECF No. 44, PageID #569–72).

Given the nature of the pleadings, and Plaintiff's decision to separate her retaliation claims into separate counts, the Court will first separately analyze the counts to determine whether the alleged retaliatory conduct in each count constitutes a sufficient adverse employment action to sustain a retaliation claim under Title VII, the ADEA, or the OCRA. Plaintiff is correct, that the burden for establishing an adverse employment action is substantially lower in the context of a retaliation claim. While a plaintiff alleging a discrimination claim under Title VII must show conduct that affects the terms and conditions of employment, to establish a retaliation claim, a plaintiff "need show only 'that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Hubbell v. FedEx SmartPost, Inc.*, 933 F.3d 558, 569–70 (6th Cir. 2019) (citing and quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64, 68, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006)).

First, the Court again expresses frustration with Plaintiff's opposition. The City MJOP provides specific caselaw to support its argument that the specific allegations of conduct in Plaintiff's retaliation claims do not qualify as adverse employment actions that would entitle Plaintiff to relief. (ECF No. 41-1, PageID #529–32). Other than mentioning the lower burden for retaliation claims, Plaintiff's opposition does not address or distinguish the cases cited by the City and it does not provide any caselaw to support her position that specific instances of conduct cited by Plaintiff qualify as adverse employment actions; instead, Plaintiff simply states that each

20

instance would dissuade a reasonable worker from making or supporting a charge of discrimination.  (ECF No. 42, PageID #543–47).

Second, when reviewing the individual retaliation claims, the Court generally agrees with the City that Plaintiff's individual and separate claims for retaliation, on their own and in isolation, do not separately qualify as sufficient adverse employment actions to sustain a claim of retaliation.[9] In Counts II, V, VI, IX, and XII, Plaintiff alleges that Marn explicitly threatened her termination, (ECF No. 32, PageID #393), made implied threats of termination, (*id.* at PageID #384–85, 399–400), or demanded a disciplinary hearing against Plaintiff, (*id.* at PageID #375–77).  In Counts IX and XI, Plaintiff alleges that Defendants attempted to limit her ability to use vacation time and reduce her job responsibilities.  (*Id.* at PageID #392–93, 397–98).  In Count VII, Plaintiff alleges that Marn and Defendant Donovan approached the City's chief engineer in an attempt to move Plaintiff's office location.  (*Id.* at PageID #386–88).  Missing from any of these allegations is that any of these threats or attempts materialized in any way or resulted in a material change in Plaintiff's employment circumstances (*e.g.*, job title, responsibilities, pay, benefits, etc.).  There are no allegations or arguments that Plaintiff was fired, was subjected to a disciplinary hearing (or was subject to any discipline at all), had her ability to use vacation time altered, or had her job responsibilities or benefits reduced.  Although the requirements to establish an adverse employment action for a retaliation claim are substantially lower than for a discrimination claim, "a showing of *some* change in employment circumstances is necessary."  *See Johnson v. Farmington Pub. Sch.*, 728 F. Supp. 3d 723, 753 (E.D. Mich. 2024) (citing *Burlington*, 548 U.S.

---

[9] The Court notes that almost all cases cited by the City, (ECF No. 41-1, PageID #529–31), to support its position that the alleged instances of retaliation in each separate claim do not qualify as adverse employment actions involve discrimination claims, which employ a more stringent requirement to establish an adverse employment action than retaliation claims.  *See Hubbell*, 933 F.3d at 569 ("Although we had previously held that the same requirements apply to Title VII retaliation claims and Title VII discrimination claims, the Supreme Court made clear in *Burlington Northern* that the requirements for a retaliation claim are in fact considerably less stringent.").

at 69) (emphasis in original); *see also Davis v. Metro Parks & Rec. Dep't*, 854 F. App'x 707, 716 (6th Cir. 2021) (holding that a lack of material adverse consequences from a written reprimand were insufficient to support a retaliation claim).

In Counts III, IV, and VII, Plaintiff alleges that Marn made rude or embarrassing statements about Plaintiff, (*id.* at PageID #378, 381, 387), and Marn engaged in lewd behavior in Count VII, (*id.* at PageID #389–91).  But these claims, by themselves, are insufficient because isolated and potentially offensive comments and conduct by an individual are insufficient to establish an adverse employment action for a retaliation claim—particularly when there is no alleged change in employment circumstances.  *See Sessin v. Thistledown Racetrack, LLC*, 187 F. Supp. 3d 869, 878 (N.D. Ohio 2016) ("Isolated and potentially offensive comments do not constitute a materially adverse change in the terms and conditions of employment and thus do not result in an adverse employment action here."); *Stewart v. Esper*, 815 F. App'x 8, 21 (6th Cir. 2020) (same). Moreover, the various allegations of Marn making disparaging, rude, or uncivil remarks about Plaintiff are not actionable under Title VII for a retaliation claim.  *See Baker v. City of Toledo*, No. 3:05-cv-7315, 2007 U.S. Dist. LEXIS 26795, at \*19–20 (N.D. Ohio Apr. 11, 2007); *Mutazz v. Amazon.com Servs. LLC*, No. 21-19987 (RBK/SAK), 2022 U.S. Dist. LEXIS 123720, at \*32 (D.N.J. July 12, 2022) ("Dismissive and otherwise rude behavior generally does not rise to the level of adverse employment action."); *Howard v. Kerry*, 85 F. Supp. 3d 428, 435 (D.D.C. 2015) (dismissing a Title VII retaliation claim, in part, because a supervisor's yelling "in an intimidating fashion" did not constitute an adverse employment action); *Cepada v. Bd. of Educ. of Baltimore Cnty.*, 814 F. Supp. 2d 500, 515 & n.25 (D. Md. 2011) (dismissing Title VII retaliation claims and holding that being "yelled at" and "criticized" did not constitute adverse employment actions under the more lenient standard for such actions applied to such claims).

That said, while the various claims in isolation do not rise to a sufficient level on their own, the Court finds that the various allegations of retaliation, when taken together are sufficient to dissuade a reasonable worker from engaging in a protected activity under Title VII.  *Sanford v. Main St. Baptist Church Manor, Inc.*, 327 F. App'x 587, 599 (6th Cir. 2009) ("[W]hile some of the incidents alone may not rise to the level of an adverse employment action, the incidents taken together might dissuade a reasonable worker from making or supporting a discrimination charge."); *see also Hubbell v. FedEx SmartPost, Inc.*, 933 F.3d 558, 569–70 (6th Cir. 2019) (providing that a claim for retaliation may be sustained by alleged actions that either on their own or in combination might dissuade a reasonable worker from filing a discrimination charge).

Significantly, or perhaps unfortunately, Plaintiff chose to plead individual claims of retaliation based on different instances of conduct across thirteen separate counts in her amended complaint, even after the Court ordered Plaintiff to amend the complaint to provide a more definite statement and cautioned her about the confusion and lack of clarity inherent with combining a myriad of claims together under a single count.  Plaintiff made the tactical decision to separate her cause of action for retaliation into siloed, separate claims, and the Court cannot rewrite the pleadings on behalf of Plaintiff.  That said, the Court is inclined to grant Plaintiff leave to amend the pleadings so that she can combine her allegations of retaliation into a single claim and allow a resolution of the issue on the merits instead of on technical, pleading deficiencies.

Accordingly, the Court will **DISMISS WITHOUT PREJUDICE** the various retaliation claims against the City under Title VII, the ADEA, and the OCRA, but will **GRANT** Plaintiff limited leave to file an amended complaint that asserts a single count for retaliation under Title VII, the ADEA, and the OCRA.  The leave granted is circumscribed and Plaintiff must comply with the specific instructions provided by the Court below.

### C.    Marn MJOP

#### 1.    *Due Process Claims*

Just like the City, Marn argues that Plaintiff's due process claims based on statutorily protected rights under Title VII and the OCRA should be dismissed because the Court rejected such claims in its prior opinion and order, such claims are duplicative of other claims, and there is no valid liberty interest.  (ECF No. 38, PageID #497–500).  Plaintiff does not provide any opposition to this argument, focusing solely on Defendants' "stigma plus" arguments.  (ECF No. 42, PageID #548–53).  Thus, Plaintiff has abandoned any due process claim based solely on violations of Title VII and the OCRA and waived any opposition to their dismissal.  *See Humphrey*, 279 F. App'x at 331; *Crable*, 2024 U.S. Dist. LEXIS 27008, at *12; *Ullmo*, 126 F. Supp. 3d at 919.  For the same reason set forth in the Court's July 24, 2025 Memorandum Opinion and Order, any due process claims based on violations of rights protected under Title VII, and the state-law analog OCRA, fail as a matter of law because they do not present a protected liberty or property interested under the Constitution.  (*See* ECF No. 30, PageID #335–37).  Thus, any such due process claims asserted against Marn are **DISMISSED WITH PREJUDICE**.

Marn also argues that Plaintiff's due process claims based on her reputation should be dismissed because there no adverse employment action and she did not request a name-clearing hearing.  (ECF No. 38, PageID #495–97).  For the same reasons as discussed above with the Individual Defendants, Plaintiff's reputation based "stigma plus" due process claims fail as a matter of law.  Accordingly, the Court **DISMISSES** all due process claim against Marn.

#### 2.    *All Claims based on Title VII and the ADEA*

Marn argues that Plaintiff cannot sustain her claims against him based on Title VII and the ADEA because they only authorize recovery against "employers" and Marn does not qualify as an

24

employer under any of those statutes, as he is considered an employee of the City the same as Plaintiff.  (ECF No. 38, PageID #486–89).  Plaintiff responds that Marn, a member of the City Council, is an employer because the City Council appoints/hires and pays the Clerk of Council, which is Plaintiff's current position; therefore, Marn is an "employer" of Plaintiff.  (ECF No. 42, PageID #540–41).  Marn replies that the City employs Plaintiff, pays for her salary, and is considered her "employer" under the law.  (ECF No. 47, PageID #586–87).

The Sixth Circuit has long held that individual employees, including supervisors, cannot be subject to liability under Title VII and the ADEA, unless they themselves otherwise qualify as an "employer" under the statute.  *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 571 (6th Cir. 2000); *Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 362 (6th Cir. 2001) ("The law in this Circuit is clear that a supervisor who does not otherwise qualify as an employer cannot be held personally or individually liable under Title VII."); *Hiler v. Brown*, 177 F.3d 542, 546 (6th Cir. 1999) ("[N]umerous courts, including [the Sixth Circuit], have held that supervisors, sued in their individual capacities, are not included within the statutory definition of 'employer' under Title VII and its sister civil rights statutes, and accordingly cannot be held personally liable for discrimination."); *Wathen v. General Elec. Co.*, 115 F.3d 400, 404–05 & n.6 (6th Cir. 1997) ("We now hold that an individual employee/supervisor, who does not otherwise qualify as an 'employer,' may not be held personally liable under Title VII.").  The Sixth Circuit has also observed that the "employer" definitions in Title VII and the ADEA are essentially identical interchangeable and require the same analysis:

> The liability schemes under Title VII, the ADEA, and the ADA are essentially the same in aspects relevant to this issue; they limit liability to the employer and use the term "agent" in defining employer.  *See* 42 U.S.C. §§ 2000e-5(b), 2000e(b) (Title VII); 29 U.S.C. §§ 626(b), 630(b) (ADEA); 42 U.S.C. §§ 12112(a), 12111(5)(A) (ADA).  Because Title VII, the ADEA, and the ADA define "employer" essentially the same way, an analysis based on Title VII, the ADEA,

and the ADA case law is appropriate.  *See E.E.O.C. v. AIC Security Investigations, Ltd.*, 55 F.3d 1276, 1279–80 (7th Cir. 1995).

*Wathen*, 115 F.3d at 404 n. 6.

Under Title VII, an "employer" is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such person." 42 U.S.C. §2000e(b).  Although Title VII does not define "agent," the Sixth Circuit has interpreted an agent as "an individual who 'serves in a supervisory position and exercises significant control over the plaintiff's hiring, firing or conditions of employment.'"  *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 803 (6th Cir. 1994) (quoting *Sauers v. Salt Lake Cnty.*, 1 F.3d 1122, 1125 (10th Cir. 1993)).  "[D]espite the express use of the word 'agent' in the statute, Title VII does not create individual liability for individuals in supervisory positions."  *Akers v. Alvey*, 338 F.3d 491, 500 (6th Cir. 2003) (citing *Wathen*, 115 F.3d at 405); *see also Wathen*, 115 F.3d at 405–06 (observing that the agent provision in Title VII was intended "to incorporate respondeat superior liability into the statute" and not to provide liability for agents).  Simply put, the definition of "employer" does not include supervisors, managers, or co-workers of a plaintiff.  *Han v. Univ. of Dayton*, 541 F. App'x 622, 629 (6th Cir. 2013).

The Court finds that Defendant Marn does not qualify as an employer under Title VII or the ADEA.  To the extent that Plaintiff alleges that Marn is her employer in his individual capacity, there are no allegations that he, on his own and individually, directly employs Plaintiff.  Plaintiff explicitly admits that the City pays her salary and benefits.  (ECF No. 42, PageID #540–41).  Plaintiff seemingly argues that the Mentor City Council has the clerk (Plaintiff's position) as its employee and maintains the power to hire and fire her.  (*Id.*).  But this is an argument that the City Council is her employer, not Defendant Marn—whom Plaintiff never argues is solely responsible for her employment.  To the extent that Plaintiff brings her claims under Title VII and the ADEA

26

against Marn in his official capacity, such claims are redundant to her claims against the City itself. *See, e.g.*, *Burton v. City of Memphis*, No. 2:13-cv-02070, 2013 U.S. Dist. LEXIS 146652, at *8 (W.D. Tenn. Oct. 10, 2013) ("Further, to the extent Plaintiff seeks to bring claims against these individuals in their official capacity, such claims are redundant to her claims against the City of Memphis." (citing *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 690 n. 55, 98 S. Ct. 2018, 56 L.Ed.2d 611 (1978)), *recommendation adopted by* 2013 U.S. Dist. LEXIS 156042, at *2–3 (W.D. Tenn. Oct. 31, 2013); *Schindewolf v. City of Brighton*, 107 F. Supp. 3d 804, 827 (E.D. Mich. 2015); *see also Phelps v. Kansas*, No. 23-2206-DDC-RES, 2026 LX 199033, at *28–30 (D. Kan. Mar. 30, 2026) ("[S]uing both the city or county and the city or county employees in their official capacities is redundant.") (collecting cases); *Gray v. City of Evergreen*, No. 24-00141-KD-B, 2024 LX 187817, at *7–9 (S.D. Ala. Sep. 20, 2024) (dismissing Title VII claims against defendant city council members in their official capacity as duplicative of the city defendant); *Robinson v. Alexander City*, No. 3:18-cv-00156-ECM, 2021 U.S. Dist. LEXIS 172002, at *15 (M.D. Ala. Sep. 10, 2021) ("A suit against the City Councilmembers is the functional equivalent of a suit against the City itself, and such claims are redundant and due to be dismissed.").

Thus, Marn does not qualify as an employer under Title VII and the ADEA.  Accordingly, all Plaintiff's claims asserted against Marn under Title VII and the ADEA are **DIMISSED WITH PREJUDICE**.

### 3. Claims under the Ohio Civil Rights Act

Marn argues that he cannot be held liable under the OCRA because: (i) the Ohio General Assembly recently amended the OCRA to exclude liability against a supervisor, manager, or other employee of an employer unless that supervisor, manager, or other employee is the employer; and (ii) state and federal courts have recognized that the amended statute precludes individual liability.

27

(ECF No. 38, PageID #488–89).  While Marn is correct to an extent, he misinterprets the revised statute and incorrectly concludes that all individual liability is proscribed under the OCRA.

Ohio Rev. Code § 4112.02 prohibits specific discriminatory employment practices.  The Ohio General Assembly amended Ohio Rev. Code Chapter 4112 when it passed the Employment Law Uniformity Act ("ELUA"), 2020 H.B. 352, which went into effect on April 15, 2021.  The ELUA eliminated supervisor liability for *some* employment discrimination claims by amending the term "employer," specifically eliminating the phrase "any person acting directly or indirectly in the interest of an employer" from the definition.  *Calkins v. Danaher Corp.*, 739 F. Supp. 3d 615, 623 (N.D. Ohio 2024); *Bostick v. Salvation Army*, 2023-Ohio-933, ¶ 66 n.2, 213 N.E.3d 730 (Ohio Ct. App. 2023); *Williams v. Barton Malow Co.*, 581 F. Supp. 3d 923, 927 (N.D. Ohio 2022).  In the ELUA, the Ohio General Assembly also declared its intent that "individual supervisors, managers, or employees are not held liable under Chapter 4112 of the Revised Code for unlawful discriminatory practices relating to employment *that are described in division (A)(24)(a) of section 4112.01 of the Revised Code*, as amended by this act."  *See* H.B. 352 at Section 3 (emphasis added).  To effectuate their intent, the legislature amended § 4112.08 to state:

> However, no person has a cause of action or claim based on an unlawful discriminatory practice relating to employment described in division (A)(24)(a) of section 4112.01 of the Revised Code against a supervisor, manager, or other employee of an employer unless that supervisor, manager, or other employee is the employer. Nothing in this division abrogates statutory claims outside this chapter or any claims of liability that exist against an individual at common law.

Thus, the proscription against liability for supervisors, managers, and employees is limited solely to the discriminatory practices described in Ohio Rev. Code § 4112.01(A)(24)(a) and does not apply to those described in § 4112.01(A)(24)(b).  *See Stewart*, 808 F. Supp. 3d at 826; *Calkins*, 739 F. Supp. 3d at 624.  Section 4112.01(A)(24) reads:

(24) "Unlawful discriminatory practice relating to employment" means both of the following:

(a) An unlawful discriminatory practice that is prohibited by division (A), (B), (C), (D), (E), or (F) of section 4112.02 of the Revised Code;

(b) An unlawful discriminatory practice that is prohibited by division (I) or (J) of section 4112.02 of the Revised Code that is related to employment.

Ohio Rev. Code §§ 4112.02(I) and (J) makes the following unlawful:

(I) For any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code.

(J) For any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, to obstruct or prevent any person from complying with this chapter or any order issued under it, or to attempt directly or indirectly to commit any act declared by this section to be an unlawful discriminatory practice.

Thus, §§ 4112.02(I) and (J) provide the basis for claims against an individual[10] for retaliation and aiding and abetting unlawful discrimination.

Since the passage of the ELUA, Ohio Courts of Appeals have held that employees may still bring claims under § 4112.02(I) (retaliation) and (J) (aiding and abetting) against supervisors, managers, and employees. *See, e.g.*, *Bostick v. Salvation Army*, 2023-Ohio 933, 213 N.E.3d 730, 745 (Ohio Ct. App. 2023); *Anderson v. Bright Horizons Child.'s Ctrs.*, LLC, 2022-Ohio-1031, ¶ 75 (Ohio Ct. App. 2022); *Burch v. Ohio Farmers Ins. Co.*, 2023-Ohio 912, 211 N.E.3d 202, 209 (Ohio Ct. App. 2023) ("Under the ELUA, an individual supervisor will only face individual liability if (1) the supervisor is an employer, or (2) the claim involves retaliation for opposing

---

[10] The OCRA defines a person to include: (i) "one or more individuals, partnerships, associations, organizations, corporations, legal representatives, trustees, trustees in bankruptcy, receivers, and other organized groups of persons"; and (ii) "any owner, lessor, assignor, builder, manager, broker, salesperson, appraiser, agent, employee, lending institution, and the state and all political subdivisions, authorities, agencies, boards, and commissions of the state." Ohio Rev. Code § 4112.01(A)(1).

29

discrimination, aiding a discriminatory practice, or obstructing a person from complying with the Ohio Civil Rights law. See R.C. [§] 4112.01(A)(24)(a); R.C. [§] 4112.08(A).").  Courts within the Northern District of Ohio likewise agree.  *See, e.g.*, *Stewart*, 808 F. Supp. 3d at 825–26; *Calkins*, 739 F. Supp. 3d at 623–24; *Williams v. Barton Malow Co.*, 581 F. Supp. 3d 923, 927 (N.D. Ohio 2022) ("The legislature eliminated that language and declared its intent that 'individual supervisors, managers, or employees not be held liable' for certain unlawful employment practices under Ohio Rev. Code Ann. § 4112.02, including sex discrimination.  However, that change does not apply to § 4112.02(I), claims for retaliation, or § 4112.02(J), claims for aiding and abetting discrimination or retaliation."); *Little v. Blue Stream Rehab. & Nursing, LLC*, No. 5:23-cv-2227, 2024 U.S. Dist. LEXIS 63516, at *13–14 (N.D. Ohio Apr. 8, 2024).

In light of the above, the Court must determine which of Plaintiff's claims under the OCRA against Marn survive, if any.  First, Plaintiff alleged claims against Marn under Ohio Rev. Code § 4112.01, *et seq.* for: (i) hostile work environment in Counts I through XIV; and (ii) discrimination in Counts VI (age) and XIV (sex and other unnamed categories).  These claims all fall under § 4112.02(A), which prohibits "any *employer*, because of the race, color, religion, sex, military status, national origin, disability, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."  Ohio Rev. Code § 4112.02(A) (emphasis added).  Consistent with the Court's prior findings concerning Title VII and the ADEA, the Court also finds that Marn is not an "employer" under the OCRA.  Because Marn is not an employer and §4112.08 bars liability against supervisors, managers, and other employees for unlawful discrimination claims under

30

§4112.02(A)–(F), Plaintiff's discrimination and hostile work environment claims brought against Marn under Ohio Rev. Code § 4112.02(A) are **DISMISSED WITH PREJUDICE**.

Although Marn does not qualify as an employer under the OCRA, he is still subject to liability for any retaliation or aiding and abetting claims under § 4112.02(I) and (J).  As to whether there are any claims under § 4112.02(J), the Court finds that Plaintiff has not asserted any aiding and abetting claims in the amended complaint.  First, nowhere in the amended complaint does Plaintiff use the words aid, abet, incite, compel, or coerce, nor does she label or style her various claims as claims seeking to hold Marn liable for aiding and abetting any unlawful discriminatory act.  Second, under Ohio law, to aid and abet under Ohio Rev. Code § 4112.02(J), a person must "actively participate in, or otherwise facilitate, *another's* discriminatory act in violation of R.C. 4112.02." *Martcheva v. Dayton Bd. of Educ.*, 2021-Ohio-3524, ¶ 74, 179 N.E.3d 687 (Ohio Ct. App. 2021) (citing *Johnson-Newberry v. Cuyahoga Cnty.*, 2019-Ohio-3655, ¶ 21, 144 N.E.3d 1058 (Ohio Ct. App. 2019)) (emphasis added); *Yankovitz v. Greater Cleveland Reg'l Transit Auth.*, 2023-Ohio-2584, ¶ 45, 222 N.E.3d 104 (Ohio Ct. App. 2023) (same); *see also Luke v. Cleveland*, No. 1:02-cv-1225, 2005 U.S. Dist. LEXIS 49630, at *19 (N.D. Ohio Aug. 22, 2005) (noting that Ohio courts generally construe aiding and abetting as an intentional act).  Plaintiff's claims almost entirely consist of conduct and actions of discrimination performed by Marn himself, not others.  Nor are there any specific or explicit allegations that Marn aided, assisted, incited, encouraged, or coerced any of the alleged discriminatory conduct of others within Plaintiff's various claims.  Thus, given the nature of the pleadings, including their vague and broad scope, as well as the lack of sufficient allegations of aiding and abetting the discriminatory conduct of others, the Court finds there are no claims asserted against Marn under § 4112.02(J).

By contrast, Plaintiff brings retaliation claims against Marn in Counts II through XIV that fall under § 4112.02(I).  Marn raises the same arguments raised by the City about the lack of a sufficient adverse employment action to sustain a claim of retaliation.  (ECF No. 38, PageID #489–53).  For the same reasons discussed above, the Court will **DISMISS WITHOUT PREJUDICE** the various retaliation claims against Marn under § 4112.02(I) of the OCRA, but will **GRANT** Plaintiff limited leave to file an amended complaint that asserts a single count for retaliation against Marn, to the extent such claims are brought solely under the OCRA.

### 5.  *Tort Claims – Statute of Limitations*

Marn argues that Plaintiff's state-law tort claims (defamation, assault, and battery) are all barred by the applicable statutes of limitations.  (ECF No. 38, PageID #493–94).  Plaintiff does not address Marn's arguments or the issue of statute of limitations in her opposition and therefore waives any opposition.  *See Humphrey*, 279 F. App'x at 331; *Crable*, 2024 U.S. Dist. LEXIS 27008, at *12; *Ullmo*, 126 F. Supp. 3d at 919.

### a.  Defamation

Marn argues that Plaintiff's claims for defamation are barred by the applicable one-year statute of limitations under Ohio Rev. Code § 2305.11 because: (i) the claims are based alleged defamatory statements made at City Council meetings on October 19, 2021, December 7, 2021, and March 21, 2023; (ii) each claim accrued when the statements were made; and (iii) this action was filed on December 2, 2024.  (ECF No. 38, PageID #493).  Under Ohio law, defamation claims are subject to a one-year statute of limitations.  *See* Ohio Rev. Code § 2305.11(A); *Friedler v. Equitable Life Assurance Soc'y of the United States*, 86 F. App'x 50, 53 (6th Cir. 2003).  For defamation claims, "[t]he statute of limitations begins to run when the allegedly defamatory words are first spoken or published regardless of the aggrieved party's knowledge of them."  *Friedler*,

86 F. App'x at 53 (quoting *Sabouri v. Ohio Dep't of Job & Fam. Servs.,* 145 Ohio App. 3d 651, 763 N.E.2d 1238, 1240–41 (Ohio App. 10 Dist. 2001)) (internal quotation marks omitted); *see also Ziegler v. Findlay Indus.*, 380 F. Supp. 2d 909, 912 (N.D. Ohio 2005) ("In Ohio, defamation claims must be brought within one year after the defamatory words are first spoken or published, regardless of when the plaintiff learns of them.").  Notably, Ohio courts have consistently refused to adopt or apply a continuing publication rule for defamation claims.  *Krowiak v. BWXT Nuclear Operations Grp., Inc.*, No. 1:18 CV 629, 2018 U.S. Dist. LEXIS 184027, at *17–18 (N.D. Ohio Oct. 25, 2018) (collecting cases); *Spitzer v. Knapp*, 2019-Ohio-2701, 2019 Ohio App. LEXIS 2811 at *15–16 (Ohio Ct. App. July 1, 2019) (collecting cases); *see also Gentile v. City of Solon*, No. 1:12-cv-1657, 2013 U.S. Dist. LEXIS 3408, at *7–8 (N.D. Ohio Jan. 9, 2013) ("In fact, Ohio courts have consistently refused to apply any proposed continuing defamation rule, instead opting to apply the "first publication" rule.").

Here, the alleged defamatory statements were first spoken on October 19, 2021, December 7, 2021, and March 21, 2023.  (ECF No. 32, PageID #377–83, 394–97).  Plaintiff filed the initial complaint in December 2024, more than a year after each claim had accrued.  Thus, Plaintiff's defamation claims are barred by the one-year statute of limitations.  The defamation claims in Counts III, IV, and X are **DISMISSED WITH PREJUDICE**.

b.     Assault and Battery

Marn argues that Plaintiff's claims of assault and battery under Ohio law are barred by the one-year statute of limitations.  (ECF No. 38, PageID #493–94).  The Court agrees with Marn. Claims for assault and battery under Ohio law are subject to a one-year statute of limitations pursuant to Ohio Rev. Code § 2305.111(B).  *See* Ohio Rev. Code § 2305.111(B); *Love v. Port*

33

*Clinton*, 37 Ohio St.3d 98, 98, 524 N.E.2d 166 (1988).  Such claims also accrue upon the date on which the alleged assault or battery occurred.  *See* Ohio Rev. Code § 2305.111(B).

Plaintiff alleges that the assault and battery claims in Count VIII took place "in the spring/summer, 2022." (ECF No. 32, PageID #389, ¶ 206).  She alleges that the conduct underlying the battery claim in Count IX occurred on August 31, 2023.  (*Id.* at PageID #399, ¶ 248).  These three claims all accrued more than one year before the complaint was filed on December 2, 2024. Thus, Plaintiff's assault and battery claims are barred by the one-year statute of limitations.  The assault claim in Count VIII and the battery claims in Counts VIII and XII are **DISMISSED WITH PREJUDICE**.

## V.    CONCLUSION

For the foregoing reasons, the Court rules as follows:

1. The Individual Defendants' motion for judgment on the pleadings (ECF No. 37) is **GRANTED**.  All remaining claims against the Individual Defendants are **DISMISSED WITH PREJUDICE** and the Individual Defendants are **DISMISSED** from this case.

2. The City's motion for judgment on the pleadings (ECF No. 41) is **GRANTED**.  All claims against the City are **DISMISSED**.

3. Defendant Scott Marn's motion for judgment on the pleadings (ECF No. 38) is **GRANTED IN PART** and **DENIED IN PART**.  All claims against Marn are **DISMISSED WITH PREJUDICE**, *except* for Plaintiff's retaliation claims asserted under Ohio Rev. Code § 4112.02(I), which are **DISMISSED WITHOUT PREJUDICE**.

4. Plaintiff is **GRANTED** limited leave to file an amended complaint to assert a single count of retaliation that sets forth the combined allegations of retaliatory conduct against the City under Title VII, the OCRA, and the ADEA, and against Marn solely under Ohio Rev. Code

34

§ 4112.02(I).  Plaintiff shall not include any of the claims dismissed in this Order outside of the aforementioned retaliation claims against the City and Marn.  Plaintiff **shall not** add any new claims or allegations that are not already contained in the first amended complaint. Plaintiff shall have fourteen (14) days from the issuance of this order to file a second amended complaint in compliance with the instructions in this Order.

**IT IS SO ORDERED.**

Date: June 4, 2026

_____

**CHARLES E. FLEMING**
**UNITED STATES DISTRICT JUDGE**